UNITED STATES, Appellant

v.

WILLIAM F. HOWARD, Private E–1,
U. S. Army, Appellee

5 USCMA 186, 17 CMR 186

No. 3990

Decided November 26, 1954

Lᴛ Cᴏʟ William R. Ward, U. S. Army, and 1sᴛ Lᴛ William G. Fowler, U. S. Army, for Appellant.

Mᴀᴊ Edwin Doran, U. S. Army, and 1sᴛ Lᴛ Richard C. Shadyac, U. S. Army, for Appellee.

### Opinion of the Court

Gᴇᴏʀɢᴇ W. Lᴀᴛɪᴍᴇʀ, Judge:

This case reaches us by certificate from The Judge Advocate General of the Army filed pursuant to the provisions of the Uniform Code of Military Justice, Article 67 (*b*) (2), 50 USC § 654, in which he requests an answer to the three following questions:

"(1) Was the board of review correct in holding that Article 31 is applicable to testimony given by accused as a witness at other court-martial proceedings?

"(2) Where the prosecution seeks to introduce the previous voluntary testimony of an accused given as a witness in a trial of a third party, must the prosecution affirmatively establish that the accused was warned of his rights under Article 31 prior to so testifying in order to establish the admissibility of such prior testimony?

"(3) In the event that the second issue is answered in the affirmative, was the board of review correct in holding that the failure of the prosecution to establish affirmatively that the accused was warned of his rights under Article 31 prior to testifying rendered his confession involuntary as to the two offenses (larceny of a carbine and assault upon a military policeman in the execution of his office), of which offenses he was neither suspected nor charged at the time but which were subsequently added as additional charges?"

The questions certified involve an interpreting of the provisions of Article 31, Uniform Code of Military Justice, 50 USC § 602. The facts of the substantive offense are not of importance, so we refer to those material to the issue which now concerns us. On February 18, 1953, the accused was charged with absence without leave, and two separate escapes from lawful confinement in the post stockade, in violation of Articles 86 and 95, respectively, of the Uniform Code of Military Justice, 50 USC §§ 680 and 689. As a result of the one escape on February 12, 1953, Private Eugene H. Martin, a guard, was charged with negligently permitting a prisoner, duly committed to his charge, to escape. That case came on for trial on March 12, 1953, and the court-martial returned a finding of not guilty. The accused appeared as a witness in behalf of the Government. On direct examination, but principally on cross-examination, he gave information which indicated that he committed larceny from, and an assault upon, Martin. As a result of those disclosures, Martin was found not guilty and on March 21,

188

1953, two additional specifications were prepared charging the accused with larceny of a carbine from, and an assault upon, a military police guard, in the execution of his duties.

On April 30, 1953, the accused was tried on all five specifications. At this trial, over his objection, the president of the special court-martial, which heard the Martin case, testified as to the judicial confession made by the accused while on the witness stand in the former hearing. As the issue of admissibility of the confession developed, it was shown that when the accused was present at his pretrial investigation on February 26, 1953, he was informed of his rights under Article 31 of the Code. The officer who conducted the pretrial investigation testified that he explained to the accused his right not to make any statement but his explanation was limited to any statements which the accused might make at the investigation. That warning appears to have been the only one made to the accused. He was found guilty on all specifications and sentenced to eight years' confinement with accessories. The convening authority reduced the period of confinement to five years, but otherwise approved the proceedings. The board of review set aside the findings on the one specification alleging escape from confinement on February 12, 1953, and the two additional specifications charging the larceny and assault offenses. The board of review reasoned that the admission of accused's previous statement before the special court-martial was error which prejudiced his substantial rights. The basis for the holding was that he was not warned of his privileges under Article 31 at the time he testified before the special court-martial. We believe in reaching its decision the board of review extended the coverage of the Article beyond its terms and applied it in a manner not contemplated by Congress.

The principal reason underlying the decision of the board of review can be found in the following language:

". . . our problem being whether the accused had properly been advised of his rights under Article 31. . . . the applicability of that Article being clear, since the accused's confession was not spontaneous, and because the officer who called the accused as a witness at the earlier trial must have known or suspected that the accused had committed an offense regarding which he was called upon to testify. Certainly, after the first few words of the accused at the original trial, the president of the special court-martial was on notice that the accused had committed an offense and he, if not counsel, was then under a duty to advise the accused of his rights if it was apparent that the accused (then a witness) was unaware of them (MCM, 1951, subpar. 150b)."

From the language used, it is apparent that the board of review concluded the Article applied because the confession was not spontaneous and that a burden to advise was placed on either defending counsel or the president of the court-martial because each was charged with notice that the accused was suspected of an offense. While the opinion does not so specifically state, the board of review must have determined that both subsections $(a)$ and $(b)$ of Article 31 were violated. For reasons which will hereinafter appear, we reach an opposite conclusion.

Article 31 of the Code, in so far as material here, is as follows:

"$(a)$ No person subject to this code shall compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

"$(b)$ No person subject to this code shall interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

A reference to the House Hearings on

the Uniform Code of Military Justice will disclose that members ▓▓▓▓▓▓ ▓ of the House Armed Services Committee considered the intent and coverage of the Article as proposed by the drafting committee. The perplexities confronting the members are revealed by some nine pages of questions and answers found in those hearings. (Hearings before House Armed Services Committee, 81st Congress, 1st Session, on H.R. 2498, pages 983–992). Some of the problems suggested by the wording of subsection (*b*) are found in the comments of Mr. Larkin, representing the drafting committee, and Congressman Brooks. Mr. Larkin stated that the format of Article 31 was adopted because "we put in here . . . the additional necessity of informing the man before you take a statement that insofar as incrimination is concerned it might be used against him." He further stated that in subsection (*a*) an accused's right not to incriminate himself, formerly found in Article of War 24, was reenacted, and that subsection (*b*) "covers a wider scope in that you can't force a man to incriminate himself beforehand—not just on the trial." Congressman Brooks inquired whether the verbiage of the Article covered every important witness in every case, and whether or not you can inform a person of the nature of an accusation when there is no accusation. Mr. Larkin replied that there might not be a formal accusation but it was intended to protect a person from answering any question when he was being investigated to fix responsibility. The Congressman then commented that subsections (*b*) and (*c*) were loosely written.

Other members of Congress raised similar queries. Referring again to the same pages from the House hearings, we summarize a colloquy between Mr. Larkin and Congressman DeGraffenried: Speaking of subsection (*b*), Mr. Larkin stated that it broadens the protection of self-incrimination so that whether a person is actually an accused or one of a number of suspects, he is entitled to be protected from being questioned until he is warned. Congressman DeGraffenried asked if his understanding was correct. He then posed the following illustration to test the method of applying the Article: A crime has been committed and several people are suspected, but no one has been arrested; they are brought in for questioning before being taken into custody; they are informed of the crime that has been committed, and that they do not have to make any statement; each one is then subject to being questioned. Mr. Larkin replied that the illustration applied correctly the protection intended to be granted.

While two illustrations do not fix the operational area of the Article, they may be considered as pointing to the aims to be accomplished by the enactment. Particularly is this true if the illustrations are illuminated by previous enactments dealing with the subject. Article of War 24, 10 USC § 1495, which was the predecessor Article, provided that a witness before a military tribunal, investigating officer, or officer taking a deposition, should not be compelled to incriminate himself. Subsection (*a*) of Article 31 of the Code seems to incorporate the same principle but it covers more ground as it is not limited to witnesses. That same Article of War protected an accused by providing further that one person should not obtain any statement from another person accused of an offense without first informing him that he need not make any statement regarding the offense of which he was accused or being investigated. The warning provided for in that provision is now found in Article 31(*b*) and the principal difference is that the latter was extended from an accused person to encompass those suspected of an offense. Under the Article, of War there were essentially two categories, namely, that of a witness and that of an accused. If we carry those categories into the new Act, then subsection (*a*) would apply to all persons, including witnesses, and subsection (*b*) would embrace only those accused and those suspected of an offense who are being interrogated prior to trial. If, however, the coverage of subsection (*b*) is coextensive with subsection (*a*), absurdities present themselves and an unreasonable and unworkable plan is

foisted on the services. This would be contrary to well-accepted principles of statutory construction as a legislative body is presumed to intend to set up a practical plan to accomplish the purposes of the enactment.

We believe there is firm ground for our conclusion that subsection (b) cannot be interpreted to apply at trial regardless of the all-inclusive language. Beyond peradventure of doubt, the framers of the Code and the Congressional Committee members concluded that the provision offered only pretrial protection to one being investigated for the commission of an offense. The cited portions of the Committee hearings establish that fact. We do not detect from those, or from any other comments, the slightest suggestion that the protection was required in the trial proper and the language of the subsection argues strongly against any such conclusion. Moreover, we can make it reasonably apparent to the reader why we believe that to interpret the subsection to apply to a trial would bring about absurd and impossible results. For illustrative purposes, we will test its impracticability in two ways. First, it is to be noted that it applies to an accused and it would be an act of futility to require that a warning be given him to the effect that anything he said, while on the witness stand, would be used against him. He knows when he takes the stand in his own behalf that what he states must be used either for or against him. Moreover, there would be no purpose in informing him of the nature of the accusation as he has already been made painfully aware of that. Again, while a person suspected of an offense need not say anything prior to trial, if he becomes an accused and takes the stand, except for a limited purpose, he must answer every material question, and he cannot contend later that the answers were inadmissible because he was not warned. Finally, there can be little reason to notify an accused that what he states may be used against him in a trial before a court-martial as he is already being prosecuted.

We next consider whether the subsection can be applied sensibly to a witness at a trial, when he is not an accused but is a possible suspect. We shall assume two situations, namely, when the witness is called by the Government, and when he testifies for the defense. In the first instance, if a warning under Article 31(b) must be given, the duty falls on the trial counsel. He is supposedly familiar with the facts to be supplied by each witness. However, his principal task is to prosecute satisfactorily the case for the Government. He is required to get at the truth and to present fairly all available evidence for that purpose. He is not charged with personally representing each and every witness. There are many factors which weigh in favor of permitting him to develop the truth and there are those which weigh against self-incrimination. However, he should not be burdened with the responsibility of discouraging witnesses from disclosing the true facts. If there is an obligation to warn, it should be imposed on someone not representing either party. A witness is called to testify against the accused, not himself; and trial counsel is entitled to ask him any material or relative question bearing on the guilt of the one on trial. Some of the questions may be incriminating, others not. The witness can be compelled to answer any nonincriminatory interrogatories even though they may have some reasonable relationship to a suspected offense. Yet the language of the subsection states positively that a suspect must be informed that he does not have to make any statement regarding the offense of which he is suspected. The two clash head-on. Moreover, the Code language presupposes that a person must answer questions concerning matters about which there is no suspicion unless he protects himself by claiming his rights against self-incrimination. If that applies to a witness at trial, the test for admissibility would be based on trial counsel's subjective apprehension of the witness' participation in, or connection with, some offense—a most tenuous ground of admissibility. Furthermore, trial counsel would be placed in a difficult situation if during his examination

191

he became suspicious that a witness was involved in some offense. He would be required to announce in open court that he suspected the witness of a crime and then inform him that he need not answer the question. An unhappy method of destroying the credibility of one's own witness.

Similar impracticable problems present themselves when the accused volunteers to testify for a third █ person. Up until the time he testifies to incriminatory facts, he may claim his privilege under subsection (a). But the important question is this: Is he also entitled to the protection of the warning required by subsection (b)? If he is, then the burden to warn must be first placed on the shoulders of defending counsel as prior to trial he alone may know the areas involving incrimination. Congress could not have intended to place the burden on defending attorneys. It is unreasonable to assume that Congress sought to prescribe different standards for military and civilian defense counsel. Both should be permitted the same latitude in defending accused persons. If a defending counsel at the trial level had to advise a witness that he need not answer any question asked of him because defending counsel suspected the witness might be involved, the possibilities are present that the wrong person might be convicted. That would hardly be proper representation. Moreover, a civilian lawyer would not labor under that difficulty. He is not subject to the Code and he could interrogate the witness at will and thereafter call him to the stand. An interpretation which would circumscribe military counsel in discussing the case with prospective witnesses would in many instances prevent the presentation of an effective defense, and we have no desire to place accused persons and counsel furnished by the armed forces in that legal strait jacket. Furthermore, military counsel alone would be seriously handicapped in obtaining leads on other testimony which might assist their clients. They might be effectively foreclosed from questioning anyone who is a suspect in the crime, as the doctrine of the fruit of the poisoned tree would

be asserted to confuse further the issue.

In view of the many difficulties which would be encountered in the trial of a case if a warning to a witness were demanded, we have no hesitancy in holding that Congress in enacting Article 31 intended to leave a witness protected only by his privilege against self-incrimination. That is the maximum protection which can be afforded him and not deny the Government the source of much relevant evidence. By subsection (a) he cannot be compelled to testify against himself; but the mere calling of him to the witness stand is not compulsion. He still has the right of free choice. If a question is incriminating, he cannot be compelled to answer; but his refusal to do so can be predicated only on a privilege which must be exercised by him personally and not by someone else.

The rule we announce is not without support in civilian cases. Specifically the board of review relied on certain cases from the State of Texas, but others which we believe are more closely in point have been cited to us. We look to those authorities for the reason that Texas has a statute similar to Article 31 which requires warning under certain conditions and other jurisdictions do not. The criminal procedure of that State prescribes that a confession should not be used if, at the time it was made, the defendant was in confinement or in the custody of an officer, unless it was made in a voluntary statement taken before an examining court in accordance with Texas law, or made in writing and signed by the confessor. In the latter instance, the written statement must show that the person giving the statement has been warned by the person to whom the statement is given; first, that he does not have to make any statement at all; and second, that any statement made may be used in evidence against him in his trial for the offense for which the confession is intended. Other provisions have to do with statements made before magistrates and the warning to be given. In Fuller v. State, 124 Tex Cr 321, 61 SW2d 825, the Court of Criminal Appeals of Texas

had before it a case in which the State was permitted to use a statement made by the defendant's wife at her own examining trial without first having shown that the requirements of the statute had been complied with. The court stated:

". . . If the accused voluntarily testifies for himself, under oath, his statements made on the examining trial are admissible against him on a subsequent trial, whether he was or was not under arrest, or cautioned. Dill v. State, 35 Tex Cr R 240, 33 SW 126, 60 Am St Rep 37; Kirkpatrick v. State, 57 Tex Cr R 17, 121 SW 511; Brown v. State, 100 Tex Cr R 326, 273 SW 263. Stated in another way, if at the time of the examining trial the accused makes no such statement as is contemplated by articles 247 and 248, CCP, but in due order of procedure takes the witness stand in his own behalf, and testifies under oath as a witness for himself, his testimony may be reproduced against him on the final trial, whether he was warned or not. In such case it is immaterial whether the accused was under arrest or not at the time he testified at the examining trial. Dill v. State, supra; Kirkpatrick v. State, supra."

In Chinske v. State, 126 Tex Cr 326, 71 SW2d 874, that same court stated:

"By bills of exception 4 and 9, appellant complains of the action of the trial court in permitting S. N. Marrs to testify as to what he heard the appellant testify in the case of the State of Texas v. H. E. Worbes, because said testimony was hearsay and secondary evidence and was an attempt to compel the appellant to testify against himself. The bills do not show that the testimony was objected to at the time it was offered, but the court's action in permitting the witness to testify was for the first time raised in his motion to set aside the verdict of the jury and the judgment of the court. We do not believe that the court committed any error in this respect for the reason that if the appellant testified in behalf of the state in the case of the State of Texas v. H. E. Worbes and did not claim his privilege that he may incriminate himself, he thereby waived the same and he could not upon his trial object to the reproduction of his testimony."

In Mitchell v. State, 109 Tex Cr 643, 6 SW2d 753, the State officers searched the residence of a named individual and discovered a large quantity of whiskey which was buried near her house. On her trial, the defendant voluntarily appeared and assumed the blame for placing the whiskey where it was discovered. The court held this testimony admissible on his trial. The Criminal Court of Appeals in that case stated:

". . . The testimony which the appellant gave upon the trial of Mrs. McLennan was not a confession. It was a voluntary statement by him under oath in a judicial proceeding under the eye of a trial court. It was given under none of the conditions which render the voluntary nature or truth of an extrajudicial confession questionable. The statement was admissible in evidence as original testimony against the appellant upon his own trial. Its admissibility would not depend upon warning, as required by the confession statute nor would it have been affected by his being in custody. With reference to such testimony, the safeguards touching its voluntary nature and warning which are made necessary by the statute (article 727, Code Cr. Proc. 1925) are not demanded. This has been repeatedly declared. See Preston v. State, 41 Tex. Cr. R. 308, 53 S.W. 127, 881; Collins v. State, 39 Tex. Cr. R. 447, 46 S.W. 933; Johnson v. State, 39 Tex. Cr. R. 627, 48 S.W. 70, and numerous other cases collated in Branch's Ann. Tex. P. C. § 80."

In Rodriguez v. State, 130 Tex Cr 438, 94 SW2d 476, the same court was faced with the question of the admissibility of a plea of guilty entered in previous proceedings. The court reiterated the rule in the following language:

". . . It is also permissible to prove against an accused what he had testified upon a former trial of

**193**

his own case, or as a witness upon the trial of another, if the evidence then given is pertinent upon the present inquiry."

The foregoing authorities offered persuasive arguments as to why a provision requiring warning should not be enforced against the Government when a witness testifies in the trial of a case. We believe the principles enunciated in those cases are even more important and necessary to proper administration in the military judicial system, for the reasons which we have hereinbefore set forth. The adoption of the principle announced by the board of review in its decision would prevent unnecessarily the development of true facts. The privilege granted by Article 31 of the Code should not be extended to that extent.

One further issue bears comment. The Manual for Courts-Martial, United States, 1951, paragraph 150*b*, page 284, provides:

". . . the court should advise an apparently uninformed witness of his right to decline to make any answer which might tend to incriminate him."

The language is not mandatory and from it we gather that the authors of the Manual concluded it was not necessary that a witness be warned under subsection (*b*) of Article 31. Otherwise, there would have been no necessity for the provision. We need not decide when a failure to comply with that requirement might be of paramount importance as the facts in this case do not raise that issue. Here the previous trial was before a special court-martial. There is no showing which would cause us to believe that the accused was not familiar with the rights guaranteed him by the Uniform Code of Military Justice. He was serving time for one conviction when he committed these crimes, and in the pretrial investigation on the present charges he was informed of his right not to make any statement concerning any offense of which he was suspected. While it is argued that this warning was limited to the pretrial hearing, one so informed might be fairly apprised that he could claim the same privilege in a subsequent judicial proceeding involving the same charges. At least the record in that case does not require a finding that the president of the special court-martial was placed on notice that the accused was uninformed of his right to decline answers to incriminating questions. We need go no further.

The first two certified questions are answered in the negative and this renders unnecessary answering the third. The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army for action not inconsistent with the views herein expressed.

BROSMAN, Judge (concurring):

I concur fully in the result reached by Judge Latimer.

Like both of my brothers, I conclude that there was no violation of Article 31 here. Subdivision (*a*) of that Article does not enter the picture—for the reason that no attempt was made to *compel* the accused to testify at the Martin trial. We have emphasized that "Undoubtedly, it was the intent of Congress in this division of the Article [Article 31(*a*)] to secure to persons subject to the Code the same rights secured to those of the civilian community under the Fifth Amendment to the Constitution of the United States—no more and no less." United States v. Eggers, 3 USCMA 191, 11 CMR 191. In a civilian setting it seems clear that the mere circumstance that one is called as a witness is not usually considered—without more—to constitute coercion to testify. Cf. Rogers v. United States, 340 US 367, 95 L ed 344, 71 S Ct 438; United States v. Monia, 317 US 424, 87 L ed 376, 63 S Ct 409; United States ex rel. Vajtauer v. Commissioner of Immigration, 273 US 103, 71 L ed 560, 47 S Ct 302; Powers v. United States, 223 US 303, 56 L ed 448, 32 S Ct 281; Wilson v. United States, 162 US 613, 40 L ed 1090, 16 S Ct 895; United States v. Block, 88 F2d 618 (CA2d Cir), cert den, 301 US 690, 81 L ed 1347, 57 S Ct 793. I would consider that under the Eggers

rule the mere calling of Howard did not involve coercion.

Of course, it may be remarked that a military witness is subject to a number of intangible pressures to testify when he is called as a witness. But so, too, is his civilian counterpart by reason of the contempt and subpoena powers of the civilian court. Moreover, the latter sort of witness is subject to similar general pressures stemming from awe of the judicial process and the courts. While I would hesitate to apply uncritically in the military sphere the strict civilian rule concerning waiver of the privilege against self-incrimination through simple failure to claim it promptly, I must accede to the proposition that there is no showing here that Howard's testimony at the special court-martial trial was compelled. See Rogers v. United States, supra.

Likewise, I deem Article 31(b) inapplicable within the present context. Under certain circumstances that provision confers a privilege to refrain from answering questions "regarding the offense" of which the person interrogated is accused or suspected. This privilege is broader than that to refrain from answering inquiries which tend to incriminate. See United States v. Williams, 2 USCMA 430, 9 CMR 60; United States v. Taylor, 5 USCMA 178, 17 CMR 178. That this principle should apply to extrajudicial interrogations is understandable, for the usual military investigator would experience difficulty both in interpreting for himself and in explaining to the suspect the meaning of the phrase "tends to incriminate." On the other hand, the personnel of a court-martial are better qualified to understand, expound, and apply this concept. Moreover, during an interrogation by a military investigator or a superior officer, the suspect may labor under at least some pressures not present in civilian interrogation. Because of this there would seem to be special need to confer an unusually broad protection on the military suspect. However, during the course of a military judicial proceeding, the need for protection is markedly reduced both by reason of the diminished danger that the witness will be forced into unwilling admissions or confessions, and the additional circumstance that all of the events of the examination are recorded. Accordingly, I do not believe that Congress intended to provide that, when called as a witness, a suspected serviceman—unlike a civilian—may not be compelled to testify as to matters which might "regard" the offense of which he is suspected, yet which do not tend to incriminate him. However, such a result would flow from a holding that Article 31(b) is applicable in the instant context.

Incidentally, the Manual—for whatever value is to be accorded it as a contemporaneous interpretation of Congressional intent—indicates that a witness may be required to respond to an inquiry, if it appears clearly that no answer thereto might tend to incriminate him. Paragraph 150. Nothing whatever is said about whether the question "regards" an offense of which he is suspected—with the apparent result that the Manual's framers did not consider this standard applicable in a court proceeding. The same rule was expressed in the 1949 Manual for Courts-Martial, paragraph 136. Yet under Article of War 24—then in force—a duty was imposed to warn an accused that he was not required to make any statement "regarding the offense of which he is accused." Thus, it appears that Congress did not choose, despite this administrative interpretation, to suggest explicitly that Article 31(b) was applicable to testimony before a court-martial.

It may be observed that Article 31(a) provides that no person shall be compelled to reply to a question "the answer to which may tend to incriminate him." By negative implication, one subject to the Code may, at least under some circumstances, compel another to reply to a question when the answer does not tend to incriminate him. Yet, as previously developed, that answer may well "regard" an offense of which the person interrogated is suspected. But Article 31(b)—if interpreted in the inclusive manner contended for by the accused here— would exclude this possibility. In view

**195**

of the precedents, the solution of the inconsistency would seem to lie in an interpretation of Article 31(b) which renders it inapplicable to proceedings before a court-martial—with the result that military law would in this regard conform to the civilian rule.

The basic thrust of both 31(a) and 31(b) moves in the direction of a protection against compulsory self-incrimination. In accord with 31(a) and the civilian precedents, an accused may be compelled to testify in a court-martial proceeding if complete immunity is conferred on him. On the other hand, under 31(b), he would seem to enjoy a privilege not to testify—if that provision be deemed to apply to courts-martial. After all, the testimony would still concern an offense "of which he is accused or suspected," although he could not be prosecuted therefor. With this in mind, I am even more firmly convinced that only subdivisions (a), (c), and (d) of Article 31 were intended to apply to proceedings before a court-martial—and 31(b) was designed solely to protect a suspect or an accused during pretrial investigation. Thus, pretermitting the issue of whether there was a showing that the accused was "suspected" of a crime by his interrogators at the court-martial trial of Martin, and the subsidiary question of whom such deficiencies in proof must be chargeable against in the case at bar, I am convinced that Article 31 is not pertinent.

I agree, too, that the president of the special court-martial which tried Martin was under no duty to ▮▮▮▮▮▮ ▮ warn the accused. Like the Chief Judge, I am inclined to regard the language of the Manual's paragraph 150b as directory, rather than mandatory. As I understand the Federal rule on the point—and that of the majority of state courts as well—there is no legal burden on the trial judge to warn an ordinary witness concerning self-incrimination. See, e. g., Wigmore, Evidence § 2269. He may if he likes, and doubtless he should if the witness appears to be uninformed. But he is not usually required to do so. We simply find here the need for balancing two opposed

**196**

values: the protection of the witness, on the one hand, and the necessity for getting at the truth, on the other—and the prevailing rule reflects a belief that the latter must be deemed to overweigh the former. It strikes me that the relevant Manual language seeks to do more than to place the ordinary witness in a court-martial proceeding on a parity with his civilian counterpart. In any event, I see nothing here to indicate that the accused was "an apparently uninformed witness" when he testified for Martin.

By way of caveat I may say that I might feel disposed to apply a different rule had the accused established that he was called as a witness at the trial of Martin as a result of information elicited from him prior to that trial without the warning required by Article 31. In such an instance a "fruit of the poisonous tree" approach might appear appropriate. However, the record is wholly silent in this particular, and I have consistently opposed speculating a court-martial into error. United States v. Josey, 3 USCMA 767, 14 CMR 185.

In view of the foregoing, I can only affirm the conviction.

QUINN, Chief Judge (concurring in the result):

I concur in the result.

In my opinion Article 31(b), Uniform Code of Military Justice, 50 USC § 602, does not require that ▮▮▮▮▮▮ ▮ a warning be given a person called to testify as a witness at a court-martial trial. The witness is not questioned as an accused or one suspected of the commission of an offense in a pretrial investigation directed to that offense, as contemplated by the Article. See: My opinion in United States v. Gibson, 3 USCMA 746, 14 CMR 164.

Unquestionably, a person may not be compelled to incriminate himself. When called as a witness, **Headnote 5** he may be uninformed of that right. In such a situation, the Manual provides that "the court should advise an apparently uninformed witness of his right to de-

cline to make any answer which might tend to incriminate him." Manual for Courts-Martial, United States, 1951, paragraph 150b, page 284. This provision appears to be precatory, but I need not decide whether it is intended as mandatory or only advisory. Clearly, it requires knowledge by the court of facts which would reasonably show that a question put to a witness calls for an answer which might incriminate him. If no such facts appear, the court's failure to inform the witness of his right cannot be regarded as invalidating his self-incriminating statements.

The accused made no effort to show that, in fact, he did not know his rights, and that at the time he testified as a witness at the guard's trial, the court should have known that the question put to him required an incriminating answer. From the record, it appears that the accused was actually aware of the privilege against self-incrimination. Before he appeared as a witness at the guard's trial, the accused was interviewed by an officer investigating the offense then pending against him. In that interview, the investigating officer read and explained Article 31 to him. Under the circumstances, the accused waived his right when he did not claim it at the time he testified as a witness.