UNITED STATES, Appellee,

v.

John R. CASTILLO, Sergeant First
Class, U.S. Army, Appellant.

No. 59,726.
CM 8700719.

U.S. Court of Military Appeals.

Sept. 27, 1989.

For Appellant: *Captain Jon W. Stentz* (argued); *Colonel John T. Edwards, Lieutenant Colonel Charles A. Zimmerman, Lieutenant Colonel Russell S. Estey, Major Eric T. Franzen, Captain Scott A. Hancock* (on brief).

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Daniel J. Dell'Orto* (on brief); *Captain Cynthia M. Brandon.*

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting alone as a general court-martial at Fort Eustis, Virginia, tried Castillo on a variety of charges—in-

cluding rape and forcible sodomy at divers times with a daughter and a stepdaughter. Most of the charges were dismissed by the judge on speedy-trial grounds; and evidence on the merits was received only as to a charge of disobeying an order to avoid contact with certain family members, and as to a charge of soliciting Lisa Gale Sells to commit sodomy, in violation of Articles 90 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 934, respectively. The military judge found appellant guilty [1] and sentenced him to a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to the grade of Private E–1.

The convening authority approved the sentence; and the Court of Military Review affirmed in a short-form opinion. We granted review on three issues specified by the Court, all of which involve appellant's Fifth Amendment rights after he took the stand to testify on the merits. [2] During oral argument, another related issue was specified. [3]

## I

Lisa Gale Sells, the first witness for the prosecution, testified that, when she was 2 years old, Castillo had married her mother and that he was "the only father I've known." Even though her mother had divorced Castillo many years before, Ms. Sells still referred to him as her "father."

In March 1985, when she was 17 years old, he had come to the apartment where she was living with her infant son. Her testimony was that

> he came into my apartment and he walked in the door, looked around, you know, talked, said the usual things that a father would say, you know, and walked towards the back, you know, where the bathroom is, you know, but he wasn't facing the bathroom, he was facing up toward me. And, he was like motioning for me to, you know, to come in and give him a blow job. He wanted—just motioned, pointed down, you know. And, I told him, no, and he kept on, he said—and I said, no, I am not—I am not going to do this kind of thing no more. And, he kept saying come on, and I said just—I said, no, and then that's when I had a knock at my door and my friend came in.

Ms. Sells had known that he intended for her to commit fellatio with him because "that was all he really asked from me since I was 4." The defense objected that this testimony was "based on uncharged misconduct under [Rule] 404(b)," but this objection was overruled. She then explained that Castillo had been asking her "to perform oral sex on him" since she was 4 years old. Therefore, "when he gestured or when he motioned for ... [her] that day in March," she knew he was serious, because "[h]e has always been serious." Castillo had not said anything but had "motioned"—"point[ed] down at his pants"—in the direction of his penis.

---

1. The judge excepted certain language in the specification alleging the Article 134 violation.

2.
 ### I
 WHETHER THE QUESTION TO WHICH APPELLANT ASSERTED HIS FIFTH AMENDMENT RIGHTS CONCERNED A "COLLATERAL" MATTER (MIL.R.EVID. 301(f)), THEREFORE ALLOWING APPELLANT TO ASSERT HIS RIGHT TO NOT RESPOND.
 ### II
 WHETHER THE MILITARY JUDGE, ONCE APPELLANT ASSERTED HIS RIGHTS UNDER THE FIFTH AMENDMENT, HAD A DUTY TO (1) ASCERTAIN WHETHER THE QUESTION CONCERNED A COLLATERAL MATTER, AND (2) BASED ON THAT DETERMINATION, ADVISE APPELLANT OF HIS OPTIONS WITH REGARD TO FAILURE TO RESPOND AND THE SANCTIONS THAT CAN BE IMPOSED.
 ### III
 WHETHER THE MILITARY JUDGE ERRED BY ORDERING APPELLANT TO RESPOND TO THE PROSECUTOR'S QUESTION.

3. WHETHER APPELLANT'S DECISION TO RESPOND TO THE PROSECUTOR'S QUESTION, AFTER HAVING EARLIER ASSERTED HIS FIFTH AMENDMENT RIGHTS WITH RESPECT TO SUCH QUESTION, CONSTITUTED WAIVER OF HIS ASSERTED FIFTH AMENDMENT RIGHTS.

Testifying in his own defense, Castillo gave a very different account of his encounter with Lisa Gale Sells in her apartment in March 1985. He denied doing "anything at all to solicit her to have sex with" him. On cross-examination, trial counsel inquired, "Are you denying that you ever committed any sexual acts with your daughter ... ?" When Castillo responded, "I would not like to answer that question under the Fifth Amendment," the following colloquy took place:

TC: Your Honor, he's on the witness stand. Your Honor, I would ask that all the prior evidence—or prior testimony be stricken that was on direct if he's not going to be cross-examined.

DC: Your Honor, we would object, first of all, to the question pursuant to Rule 608 in that it's, you know, getting into specific instances of conduct for impeachment purposes, and not only that, 608(b) specifically says, the giving of testimony, whether by an accused or by another witness does not operate as a waiver of the privilege against self-incrimination when examined with respect to matters which relate only to credibility.

TC: Your Honor, only by the grace of the statute of limitations is this uncharged misconduct. There's no need for a Fifth Amendment claim here. He can't be prosecuted for it. Therefore the Fifth Amendment claim is invalid. And, this—this is something that was brought out by the witness, and this is something that would make her believable, the fact that he had committed these things her whole life. If he's going to be able to sit here and take the Fifth Amendment and deny he ever touched her—

MJ: Well, it's the opinion of this court that the accused cannot take the Fifth Amendment when he takes the stand as a witness. So, I'm going to require the accused to respond to that.

When trial counsel repeated his earlier question, defense counsel objected, citing Mil.R.Evid. 403, 404, and 608, Manual for Courts–Martial, United States, 1984. He contended that "specific instances of misconduct" were not admissible "under [Rule] 608 for any type of impeachment purpose." He conceded that

[u]nder [Rule] 404(b), I suppose it could be ruled that it might be admissible as it was ruled this morning as to the intent. However, we would—we would argue that any—any probative value would be substantially outweighed by the—the probative value would be outweighed by any—by the prejudicial effect pursuant to Rule 403, and, therefore, should be inadmissible under that rule.

Ultimately, the military judge overruled the objection, whereupon Castillo answered "[n]o, sir" to trial counsel's question. Thereafter, trial counsel inquired, "Then you did in fact have sexual contact with her?", to which Castillo responded, "Yes, sir." When asked about the type of sexual contact, he replied that "[s]he just played with me, that was about it"; and at that point the judge cut off inquiry about the details.[4]

In his final argument, trial counsel contended that, although Castillo only "motioned or ... gestured," Lisa Sells had "no doubt, based on her past experience, what he wanted. There was no doubt. He knew what he could get from her and that's why he didn't have to ask her." Defense counsel countered that "there's just no way that even if in fact the gestures were made that they could be in any way construed as a solicitation to commit sodomy."

## II

### A

In preparation for considering the granted issues, we must inquire whether the military judge erred in admitting over defense objection the testimony of Ms. Sells

---

4. The judge did, however, allow these questions:
 Q. Are you denying that you ever had her commit sodomy with you?
 A. Yes, sir.
 Q. You're saying that never happened?
 A. Yes, sir.

about her prior sexual contacts with Castillo. The applicable rule of evidence is Mil.R.Evid. 404(b), which provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Perhaps the testimony of Ms. Sells could be viewed as proof of Castillo's "intent" when he "motioned" to her. It also tends to show "absence of mistake" on her part in interpreting the "motioning" by Castillo—although this probably is not what the drafters of Mil.R.Evid. 404(b) had in mind when they used this phrase.

■ However, it is unnecessary for admissibility that her testimony fit within a particular category listed in the rule. Some 35 years ago, this Court noted that an "ambiguity" existed in paragraph 138*g*, Manual for Courts–Martial, United States, 1951, which concerned evidence of other misconduct. This "ambiguity" was "suggested by the following inquiry: Was the enumeration of the five examples ... [set out in 138*g* ] meant by the framers of the Manual to constitute an exhaustive enumeration or merely an illustrative one?" This "inquiry" "reflect[ed] an indecision manifested by both American and British civilian courts respecting the rule to be applied in the admission of evidence of prior misconduct." *United States v. Haimson,* 5 USCMA 208, 226, 17 CMR 208, 226 (1954) (footnote omitted).

The "original rule," which apparently was espoused by Dean Wigmore, the American Law Institute, and the National Conference of Commissioners on Uniform State Laws, "den[ied] the need for seeking to predicate the admissibility of particular acts on the existence of specific categories of relevance." *Id.* at 227 n. 4, 17 CMR at 227 n. 4. On the other hand, a "spurious rule" had developed, which required that relevance be demonstrated in terms of specific justifications like those enumerated in the 1951 Manual for Courts–Martial. *Id.* at 226 n. 4, 17 CMR at 226 n. 4. Ultimately, this Court interpreted paragraph 138*g* consistent with the "original rule." *See United States v. Thomas,* 11 MJ 388, 393 (CMA 1981); *accord United States v. Stokes,* 12 MJ 229, 238 (CMA 1982).

In both *Thomas* and *Stokes,* we recognized the substantive roots of Mil.R.Evid. 404(b) in paragraph 138*g,* and we continue to be of that view. Thus, as we interpret Mil.R.Evid. 404(b)—and Fed.R.Evid. 404(b), from which it is taken without change, Drafters' Analysis, App. 22, 1984 Manual, *supra* at A22–32—the drafters of the Military Rules of Evidence adopted the "original rule." Indeed, this is made clear by the Drafters' Analysis of Mil.R.Evid. 404(b) which states:

While providing that evidence of other crimes, wrongs, or acts is not admissible to prove a predisposition to commit a crime, the Rule expressly permits use of such evidence on the merits when relevant to another specific purpose. *Rule 404(b) provides examples rather than a list of justifications for admission of evidence of other misconduct.*

(Emphasis added.)

Accordingly, the sole test under Mil.R.Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses. 5 USCMA at 226 n. 4, 17 CMR at 226 n. 4. It is unnecessary, however, that relevant evidence fit snugly into a pigeon hole provided by Mil.R.Evid. 404(b).

■ With this in mind, we have no doubt that the testimony of Ms. Sells fulfilled Mil.R.Evid. 404(b)'s criteria for admissibility. It described a course of dealing between Ms. Sells and appellant that explained and corroborated her testimony as to what happened in March 1985. *Cf.* 5 USCMA at 228, 17 CMR at 228. Indeed,

her version of the encounter with Castillo would make little sense without some understanding of the prior relationship between the two. Apparently, appellant intended for her to recall the past sexual contacts when he "motioned" to her; and in order to understand the significance of that gesture, the factfinder was entitled to consider that history.

 Even evidence which passes the test of Mil.R.Evid. 404(b), however, still must be evaluated under Mil.R.Evid. 403; and if there is a "danger of unfair prejudice," it should be excluded. *See United States v. Gamble*, 27 MJ 298, 299 (CMA 1988). The need for this evaluation is enhanced because now a very low threshold exists as to admissibility of evidence of other misconduct. No longer is it required that such evidence be "clear and convincing," as was once the case. *See United States v. Janis*, 1 MJ 395, 397 (CMA 1976). Instead, now the military judge must admit the evidence if he concludes that the factfinder could reasonably find by a preponderance of the evidence that the other misconduct had occurred, even though the judge himself would not make such a finding. *United States v. Mirandes–Gonzalez*, 26 MJ 411 (CMA 1988); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).[5]

 We recognize that, in this case, the testimony by Ms. Sells about appellant's acts of sodomy with her when she was a young girl would tend to inflame and prejudice a factfinder. However, this circumstance does not require the conclusion that there was "*unfair* prejudice." (Emphasis added.) In our view, if testimony is indispensable for a full understanding by the factfinder of the transaction which has given rise to a criminal charge, then the evidence is admissible under Mil.R.Evid. 403. An accused is not immunized in such a situation against the Government's use of evidence of other misconduct because that

other misconduct was especially flagrant and repugnant. *See United States v. Stokes, supra* at 239. In view of the significance of the testimony by Ms. Sells about prior sexual contacts with Castillo, we are convinced that the judge properly admitted this evidence.

**B**

 According to Mil.R.Evid. 301(e):

When an accused testifies voluntarily as a witness, the accused thereby waives the privilege against self-incrimination with respect to the matters concerning which he or she so testifies. If the accused is on trial for two or more offenses and on direct examination testifies concerning the issue of guilt or innocence as to only one or some of the offenses, the accused may not be cross-examined as to guilt or innocence with respect to the other offenses unless the cross-examination is relevant to an offense concerning which the accused has testified. This waiver is subject to Mil.R.Evid. 608(b).

For our purposes, the critical language is, "with respect to the matters concerning which he or she so testifies."

As we understand this language, an accused's waiver would not be so broad as to permit cross-examination about specific instances of misconduct as to which the military judge allows cross-examination to impeach the accused's character for truthfulness or untruthfulness. Indeed, Mil.R. Evid. 608(b) specifically provides that "[t]he giving of testimony, whether by an accused or by another witness, does not operate as a waiver of the privilege against self-incrimination when examined with respect to matters which relate only to credibility."

The question here is whether, when Castillo testified on the soliciting charge, he waived his privilege against self-incrimination with respect to cross-examination about other misconduct which did not "re-

5. In the present case, this distinction is unimportant, since the military judge was the factfinder. However, in a trial by members, it can be significant if the judge is not convinced by a preponderance of the evidence that the other misconduct had occurred, but if he believes, nonetheless, that the court members could reasonably come to the opposite conclusion.

late only to credibility," *see* Mil.R.Evid. 608(b), but instead, related to other offenses which were relevant under Mil.R.Evid. 404(b). The answer to this question involves reconciling Mil.R.Evid. 301(e) with Mil.R.Evid. 404(b)—a task whose difficulty has been implicitly recognized by legal commentators.[6]

According to Mil.R.Evid. 301(e), if an accused takes the stand to testify about only one of two charged offenses, he may nonetheless be cross-examined as to the other offense, if "the cross-examination is relevant to" the offense "concerning which the accused has testified." It seems plausible that in like manner an accused's testifying about a charged offense should constitute a waiver of the privilege against self-incrimination with respect to cross-examination about uncharged misconduct, as long as the cross-examination is "relevant to" the offenses about "which the accused has testified" voluntarily on direct examination. Moreover, "uncharged misconduct" arguably is "relevant" if extrinsic evidence thereof would be admissible under Mil.R.Evid. 404(b).

On the other hand, the language of Mil.R.Evid. 301(e) may have contemplated that the cross-examination of an accused would take place within the limits prescribed by Mil.R.Evid. 611(b), which provides:

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The military judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

Under that interpretation it seems doubtful that uncharged misconduct occurring several years before an alleged offense about which an accused has testified would be within the "subject matter" of his testimony for purposes of Mil.R.Evid. 611(b).

We note, too, that the language of Mil.R.Evid. 301(e) is changed slightly from the comparable rule in the original version of the 1969 Manual, which stated that

> [w]hen an accused voluntarily testifies as a witness, he thereby, with respect to the issues concerning which he so testifies, waives the privilege against self-incrimination. Consequently, when an accused voluntarily testifies concerning the issue of his guilt or innocence of an offense for which he is being tried, as when he voluntarily testifies in explanation or denial of such an offense, he cannot, upon cross-examination as to matters relevant

---

**6.** *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 93–94 (2d ed. 1986). The authors do not specifically discuss the situation in the case at bar where an accused is asked about uncharged misconduct which is relevant under Mil.R.Evid. 404(b). However, they have this discussion of the situation where an accused testifies on only one of several charged offenses:

> In many cases the government will charge several offenses simultaneously, and will take the position that evidence about each offense is relevant to all crimes charged. The evidence may show intent, common plan or scheme, guilty knowledge, etc. If an accused takes the stand to testify about one of several charges and the government claims that evidence about other charges is relevant to the one charge testified to by the accused, must the accused answer questions about the other charges? If the accused is forced to answer, it is doubtful that members of the court will be able to confine the testimony to the one charge on which the accused has chosen to testify. And if the accused invokes the privilege against self-incrimination and refuses to

answer questions, invocation of the privilege before members of the court may prove to be damaging to the defense. In this situation, a severance may be desirable so that the prosecution is entitled to ask the defendant all relevant questions about the crime about which the defendant testifies, but the defendant is not put to the Hobson's choice of having to answer questions relating to charges to which he or she did not testify, or invoking the privilege before the members of the court. If a severance is granted, testimony by the accused on cross-examination should not be used in subsequent prosecutions, since Rule 301(e) indicates that the accused should be able to testify as to one charge and only one charge. If testimony given on one charge were used on other charges, the spirit of the Rule would be violated. Severance is not common in military courts. If successfully opposed by the government, arguably the government should have to forego Rule 404(b) cross-examination. *See generally United States v. Kelly,* 7 [U.S.]C.M.A. 218, 22 C.M.R. 8 (1956).

to that issue, justify a refusal to answer questions on the ground that his answers might tend to incriminate him.

*See* para. 149*b* (1), Manual for Courts–Martial, United States, 1969 (Revised edition). The substitution of "matters" for "issues" —which, according to the Drafters' Analysis, was made "for purposes of clarity"— seems to correlate with Mil.R.Evid. 611(b) and to imply that an accused's waiver of the privilege against self-incrimination does not extend to cross-examination about all facts relevant to "the issue of his guilt or innocence" but, instead, that its scope depends on the substance of the direct testimony. Likewise, the comment in the Drafters' Analysis of Mil.R.Evid. 301(e) that "waiver depends upon the actual content of the accused's testimony" suggests that the waiver should be construed in a limited fashion. 1984 Manual, *supra* at A22–6.

The warning requirements of Article 31(b), UCMJ, 10 USC § 831(b), do not apply to a witness testifying in a court-martial. *United States v. Howard,* 5 USCMA 186, 17 CMR 186 (1954). However, Mil.R.Evid. 301(b)(2), which concerns "Judicial advice," embodies a policy that witnesses be protected against an unwitting waiver of their privilege against self-incrimination. It provides that,

> if a witness who is apparently uninformed of the privileges under this rule appears likely to incriminate himself or herself, the military judge should advise the witness of the right to decline to make any answer that might tend to incriminate the witness and that any self-incriminating answer the witness might make can later be used as evidence against the witness.

█ We are concerned that Mil.R.Evid. 301(e) and Mil.R.Evid. 611(b) may not give adequate notice that, by taking the stand, an accused waived his privilege against self-incrimination as to the offense being tried, as well as an offense which was committed in an entirely different time and place but which was relevant under Mil.R. Evid. 404(b). Therefore, in line with the

policy of Mil.R.Evid. 301(b)(2) and to avoid technical waivers, we hold that, by testifying on direct examination about an offense for which he is being tried, an accused does not waive his privilege against self-incrimination with respect to uncharged misconduct at an entirely different time and place. Thus, on cross-examination he cannot be compelled to answer questions about such misconduct. Even though a prosecutor may introduce extrinsic evidence of such misconduct pursuant to Mil.R.Evid. 404(b), the military judge is not permitted to order the accused to answer questions about it.

█ On the other hand, an accused who testifies about a charged offense has waived his privilege against self-incrimination as to any facts concerning the particular transaction which gave rise to the charge on which he has elected to testify, even though those facts may establish his guilt of other crimes. He may be cross-examined as to such facts; and despite any claim of self-incrimination, he may be ordered by the military judge to answer the prosecutor's questions about them.

█ With this distinction in mind, we conclude that Castillo's waiver of his privilege against self-incrimination did not extend to acts of sodomy with Ms. Sells which occurred long before the solicitation offense as to which he was testifying. Therefore, the military judge could not order him to answer the prosecution's question or be subject to being punished for disobedience of the order.

█ Ironically, Castillo may not have had a valid privilege against self-incrimination with respect to the earlier misconduct. According to Mil.R.Evid. 301(c), "A witness may not assert the privilege if the witness is not subject to criminal penalty as a result of an answer by reason of immunity, running of the statute of limitations, or similar reason." *See also* para. 150*b*, 1969 Manual, *supra.* As trial counsel intimated, the statute of limitations may have run as to the prior misconduct; and, in that event, Castillo could have been ordered to testify

thereon, because he could no longer be prosecuted for the misconduct.

■ However, it would be necessary for the Government to establish not only that prosecution under the Uniform Code was barred, but also under any other federal or state penal statutes, *cf. Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). No such showing was made; and we are not in a position to decide that, because of the statute of limitations, Castillo was not entitled to claim the privilege against self-incrimination.

C

■ According to Mil.R.Evid. 301(f)(2): If a witness asserts the privilege against self-incrimination on cross-examination, the military judge, upon motion, may strike the direct testimony of the witness in whole or in part, *unless the matters to which the witness refuses to testify are purely collateral.*

(Emphasis added.) Cross-examination as to other misconduct, if undertaken solely for purposes of impeachment under Mil.R. Evid. 608(b), would, in our view, concern a matter which was "purely collateral." With respect to such cross-examination, the accused may properly assert his privilege against self-incrimination. In that event, he may not be compelled to answer the prosecutor's questions and is not subject to the sanction of having his testimony stricken. *Cf. United States v. Richardson*, 15 MJ 41 (CMA 1983).

■ Mil.R.Evid. 301(f)(2) apparently contemplates that there may be other "matters" as to which a witness may claim his privilege against self-incrimination and refuse to testify, which are not "purely collateral." In our view, other misconduct

as to which evidence is admissible under Mil.R.Evid. 404(b) falls into this category. Therefore, since Castillo asserted his privilege against self-incrimination on cross-examination as to a matter which was not "purely collateral," his testimony could have been stricken by the military judge pursuant to Mil.R.Evid. 301(f)(2). *Accord United States v. Panza*, 612 F.2d 432 (9th Cir.1979).[7]

The military judge could have stricken Castillo's testimony and cross-examination insofar as it concerned the charge of solicitation, but he was not entitled to order Castillo to testify about the prior misconduct.[8] The Fifth Amendment and Article 31(a) shielded appellant from any such order. Accordingly, we must decide the effect of the military judge's requiring that Castillo respond to trial counsel's question.

D

■ After Castillo asserted his Fifth Amendment claim, trial counsel asked that his prior testimony on direct be stricken. If appellant had persisted then in refusing to answer the prosecutor's question about earlier misconduct, the Government would have been entitled to the requested relief. If the military judge's comment, "I'm going to require the accused to respond to that," was intended only to advise Castillo that, unless he answered, his direct testimony would be stricken, no error was committed. Admittedly such a ruling would have given appellant considerable incentive to answer; but it would not constitute an order that he answer.

On the other hand, the language used by the military judge is at least equally susceptible to the interpretation that the military judge, a colonel, was ordering Castillo to answer the question and was placing behind that order the authority of his office

---

7. He also might have employed lesser sanctions. *See United States v. Panza*, 612 F.2d 432, 437–38 (9th Cir.1979). Before invoking any of these sanctions, it would be appropriate for the judge to advise the accused of the intended action, so that he might make an informed choice whether to waive his privilege against self-incrimination or have his testimony stricken.

8. Even if the military judge was entitled to order that appellant answer the question and to enforce the order by prosecution, it still might be preferable to utilize the sanction provided by Mil.R.Evid. 301(f)(2)—namely, striking the accused's direct testimony.

and his rank. We need not decide what sanctions—such as prosecution for disobedience—would be available to enforce such an order. It suffices to conclude that such an order would constitute compulsion; and therefore it would violate Article 31(a), unless the privilege against self-incrimination had been waived.

 Under the circumstances, the ambiguity of the military judge's words should be construed against the Government, rather than against appellant. Accordingly, we conclude that the military judge erred by compelling Castillo to answer trial counsel's question—instead of striking his direct testimony. However, we also are convinced the error was harmless.

 As a general principle, the privilege against self-incrimination must be promptly claimed; and if not claimed, it is waived. *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). Perhaps we should "hesitate to apply uncritically in the military sphere the strict civilian rule concerning waiver of the privilege against self-incrimination through simple failure to claim it promptly." *See United States v. Howard*, 5 USCMA at 195, 17 CMR at 195 (Brosman, J., concurring). Nevertheless, in the context of the present case, we believe that, by failing to claim his privilege against self-incrimination with respect to a later question by trial counsel about the same subject matter, appellant waived his privilege with respect to that question. Therefore the answer was properly before the court-martial.

Since that answer embraced the subject matter of the earlier answer—which the military judge had erroneously compelled Castillo to answer in violation of Article 31(a)—and was much more explicit than the first answer, the military judge's error was harmless beyond reasonable doubt. *See United States v. Remai*, 19 MJ 229 (CMA 1985) (Fifth Amendment violation is subject to harmless-error analysis.)

III

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.