# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39024**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Anthonei T. SUDDS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 August 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dishonorable discharge, confinement for 12 years, total forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 11 December 2015 by GCM convened at McConnell Air Force Base, Kansas.

*For Appellant:* Captain Allen S. Abrams, USAF.

*For Appellee:* Major Amanda L.K. Linares, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF.

Before HARDING, C. BROWN, and SPERANZA, *Appellate Military Judges*

Judge C. BROWN delivered the opinion of the court, in which Senior Judge HARDING and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

C. BROWN, Judge:

A general court-martial consisting of officer members convicted Appellant, contrary to his pleas, of one specification of rape by unlawful force on divers occasions, one specification of sexual assault by causing bodily harm on divers

occasions, and two specifications of assault consummated by a battery in violation of Articles 120 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 928.[1] The members sentenced Appellant to a dishonorable discharge, confinement for 12 years, total forfeiture of all pay and allowances, and reduction to E-1. The convening authority disapproved the adjudged forfeitures, but otherwise approved the sentence as adjudged and deferred and later waived the mandatory forfeitures for the benefit of Appellant's dependent daughter.

On appeal, Appellant raises the following assignments of error: (1) in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the military judge committed prejudicial error in his instructions to the court members; (2) the evidence is factually insufficient to sustain his rape and sexual assault convictions; (3) the evidence presented by the Government prejudicially varied from the bill of particulars; (4) the military judge abused his discretion by permitting the introduction of evidence that Appellant watched rape-themed pornography; (5) Appellant's statements to law enforcement should have been suppressed because law enforcement officers failed to properly place Appellant on notice of the offenses of which he was suspected of committing; (6) trial counsel's findings argument was improper; (7) the military judge abused his discretion by permitting the admission of a portion of a video made by Appellant wherein Appellant admits to raping his spouse;[2] and (8) Appellant's convictions should be reversed for cumulative error.[3] Finding no relief is warranted, we affirm the findings and sentence.

## I. BACKGROUND

Appellant and the victim, TB, met online in late 2011 when they were both 18 years old. The couple met in person on two occasions, once in October 2012 in North Carolina where TB resided with her parents, and once in the fall of 2013 in San Antonio when Appellant graduated from Air Force Basic Training. The couple married in December 2013, and moved to an apartment near

---

[1] For one of the assault specifications, the members acquitted Appellant of the greater offense of aggravated assault, but found him guilty of the lesser included offense of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having considered Appellant's arguments, we summarily reject them as they do not require additional analysis or warrant relief. *See United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

[3] Raised pursuant to *Grostefon*, 12 M.J. 431. Having considered Appellant's arguments, we summarily reject them as they do not require additional analysis or warrant relief. *See Matias*, 25 M.J. 356.

McConnell Air Force Base, Kansas where Appellant was stationed for his first duty assignment. Appellant was TB's first boyfriend and she was a virgin prior to their marriage. During their less than one-year marriage, Appellant physically abused TB by punching her, kicking her, choking her around the neck, and pulling her hair.

Aside from the physical altercations, the main issue in the couple's short marriage appeared to be their disagreement over sex. The couple often argued about sexual intercourse when TB did not want to have sex with Appellant. Appellant would demand sex from TB, stating things such as "you're going to give me sex," "we're going to have sex," "you're my wife, you are going to give me sex." TB described several occasions where Appellant used unlawful force to have sexual intercourse with her, including one instance where she demanded Appellant get a condom before having intercourse with her and Appellant forcibly pried open her legs and had intercourse with her despite her physical resistance. TB described several other occasions where she refused sexual intercourse, passively resisted Appellant by telling him no and not physically giving in to his advances, but despite her refusals, Appellant had sexual intercourse with her anyway.

## II. DISCUSSION

### A. Use of Propensity Evidence Pursuant to Mil. R. Evid. 413

Based on the military judge's instructions concerning the use of the charged offenses as propensity evidence and the members' consideration of this evidence, Appellant claims his convictions for rape and sexual assault must be set aside based on our superior court's rulings in *Hills*, 75 M.J. 350, and *United States v. Hukill,* 76 M.J. 219 (C.A.A.F. 2017). Prior to trial, the Government notified the Defense of its intent to offer various sexual offenses committed by Appellant as propensity evidence under Military Rule of Evidence (Mil. R. Evid.) 413. Two of the acts were not charged offenses and occurred when Appellant visited TB in North Carolina prior to their marriage. First, Appellant placed TB's hand on his penis and moved it up and down despite her lack of consent. Second, Appellant pushed TB's head toward his penis and held her head there so she would perform oral sex on him despite TB indicating she did not desire any sexual contact with Appellant. The remaining sexual offenses offered as potential propensity evidence also involved TB and were contained in the charged rape and sexual assault specifications. Trial defense counsel submitted a motion for appropriate relief based on the Government's notice requesting the military judge prohibit the Government from offering any propensity evidence.

After conducting a hearing on the Defense motion, the military judge held the sexual acts which occurred in North Carolina prior to Appellant's and TB's

marriage could be considered as propensity evidence. He deferred ruling on the sexual acts contained within the charged offenses, but after presentation of evidence, and recognizing the status of the law at that time, denied the Defense's motion to preclude the use of the Mil. R. Evid. 413 evidence as applied to the charged offense, stating, "the government will be permitted to argue that evidence as it sees fit, in accordance with [Mil. R. Evid.] 413."

The military judge later instructed the members consistent with his ruling and the standard Benchbook instructions, stating in part:

> Further, evidence that the accused committed the rape alleged in Specification 1 of Charge I, may have no bearing on your deliberations in relation to Specification 2 of Charge I, unless you first determine by a preponderance of the evidence that is more likely than not, the offense alleged in Specification 1 of Charge I occurred. If you determine, by a preponderance of the evidence, the offense alleged in Specification 1 of Charge I occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to Specification 2 of Charge I.
>
> You may also consider the evidence of such other act of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault. You may not, however, convict the accused solely because you believe he committed this offense or solely because you believe the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist. The accused may be convicted of an alleged offense, only if the prosecution has proven each element beyond a reasonable doubt.
>
> Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault. However, it may demonstrate that the accused has a propensity to commit that type of offense. The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged. Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.

The military judge provided the same instruction as to how the members could permissibly use the charged sexual assault allegation in their deliberations in relation to the rape specification, as well as to how the members could permissibly use the uncharged sexual offenses in relation to the charged offenses.

The meaning and scope of Mil. R. Evid. 413 is a question of law that is reviewed de novo. *Hills*, 75 M.J. at 354. Instructional errors are also reviewed de novo. *Id.* at 357.

Mil. R. Evid. 413(a) provides that in a court-martial where the accused is charged with a sexual offense, evidence that the accused committed other sexual assaults may be considered on "any matter to which it is relevant." This includes using evidence of sexual assaults to prove the accused has a propensity to commit sexual assault. *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

However, in *Hills*, the United States Court of Appeals for the Armed Forces (CAAF) held that evidence of the accused's commission of a sexual assault may *not* be used in this way if the alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. 75 M.J. at 356. The CAAF further held that the instructions accompanying the admission of evidence of charged offenses for Mil. R. Evid. 413 purposes implicate fundamental constitutional due process concerns by undermining an accused's presumption of innocence and the Government's requirement to prove guilt beyond a reasonable doubt. *Id.* at 357. Because "constitutional dimensions are in play," prejudice for such an error must be tested for harmlessness beyond a reasonable doubt. *Id.* (quoting *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006)). "An error is not harmless beyond a reasonable doubt when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Id.* at 357–58 (quoting *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007)). "'To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Id.* at 358 (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991)).

In *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), the CAAF clarified that *Hills* is not to be interpreted narrowly:

> [T]he use of evidence of charged conduct as [Mil. R. Evid.] 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected. Whether considered by mem-

bers or a military judge, evidence of a charged and contested of-
fense, of which an accused is presumed innocent, cannot be used
as propensity evidence in support of a companion charged of-
fense.

*Id.* at 222. The CAAF reiterated that, where such error exists, the Government
must "prove there was no reasonable possibility that the error contributed to
[the] verdict." *Id.*

Applying *Hills* and *Hukill*, we readily conclude the military judge erred in
permitting evidence of the charged sexual offenses to be used pursuant to Mil.
R. Evid. 413 and instructing the court members accordingly. Although the mil-
itary judge's ruling is understandable, coming as it did before the decision in
*Hills*, we must "apply the clear law at the time of appeal, not the time of trial."
*United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citing *United States
v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)). We nonetheless find that this
constitutional error was harmless beyond a reasonable doubt.

In finding this error unimportant in relation to everything else the mem-
bers considered on the issue in question, we note the Government's case for the
rape and sexual assault specifications was strong and buttressed by Appel-
lant's admission to raping TB in a video taken from his cell phone. As with
most sexual assault cases, the credibility of the victim and the accused was a
central issue, and here TB's testimony was compelling and reasonably con-
sistent while Appellant's own admissions, including a videotaped admission of
rape, provide strong evidence and largely corroborated TB's testimony.

In corroborating the details of TB's testimony during his interview with the
Air Force Office of Special Investigations (AFOSI), Appellant made several
general admissions concerning his physical assaults on TB. Appellant also ad-
mitted he didn't think a husband could rape his wife, stated he told TB on
several occasions she "owed him sex," and admitted he watched rape-themed
porn during the course of their marriage. Additionally, the two uncharged non-
consensual sexual offenses that occurred prior to the couple's marriage where
Appellant forced TB to fondle his penis and held her head onto to his penis so
she would perform oral sex on him were available for the members' considera-
tion as proper propensity evidence. Finally, trial counsel made no mention of
charged Mil. R. Evid. 413 evidence in her closing and did not appear to rely on
it or emphasize it during her case.

TB testified under oath and was subject to the crucible of cross-examina-
tion. Despite trial defense counsel's attempt to challenge TB's credibility on
cross-examination, any discrediting of TB paled in comparison to Appellant's
over five-hour AFOSI interview wherein he provided false statements about

significant details concerning his relationship with TB. Consequently, the military judge instructed the members that they could consider Appellant's false explanations to investigators as indicative of his consciousness of guilt.

TB's testimony described in detail three instances of rape. The first occurred when she did not want to have sexual intercourse because Appellant did not have a condom. Despite her protestations, Appellant forcibly pried open her legs to the point where TB thought her leg muscle was going to be "ripped open." Appellant then had sexual intercourse with TB while holding her down with his body weight. In the second incident, Appellant again pried TB's legs open and then she described going "ragdoll," or becoming motionless in hopes Appellant would stop. Instead, Appellant continued to penetrate TB. Finally, TB described a third incident where Appellant penetrated her from behind after forcibly opening her legs. On this occasion, TB continued to tell Appellant to stop while crying into her pillow as Appellant penetrated her using his body weight to hold her down.

In terms of the sexual assaults, TB describes the first time she had sexual intercourse with Appellant. TB was a virgin and consented to the initial sexual intercourse with her on top of Appellant. During the intercourse, the pain became unbearable to TB and she told Appellant how much it hurt and that she wanted him to stop having intercourse with her. When Appellant refused to stop, TB tried to slide off of him, but he held her legs so she could not get off of him and continued to penetrate her until he ejaculated. TB described another occasion where Appellant told her "you owe me sex" and she refused, telling him to get away from her. Despite her refusal, Appellant penetrated TB. She yelled at him to "get the f[**]k off of me," until Appellant stopped having intercourse with her after "he lost [his erection], because [she] fought too much."

TB testified that it became a common occurrence for Appellant to tell her he wanted sex, start taking off her clothes, and for TB to tell Appellant, "I'm not doing anything, I don't want to have sex with you." Appellant would then pull down her underwear, either taking her underwear off or just taking them partially off, and have sex with TB while she completely ignored him or played games on her phone. Sometimes Appellant would stop trying to have sex with TB if she did not react or played on her phone, but other times Appellant would penetrate TB despite her telling him she did not want to have sex and not physically responding to him.

Applying the standard of harmless beyond a reasonable doubt, we find ample support from other evidence in the record that convinces us that the error in permitting the charged rape and sexual assault offenses to be used as propensity evidence with regards to each other and the corresponding error in giving the Mil. R. Evid. 413 instruction were unimportant in relation to everything else the court members considered in finding Appellant guilty of rape

and sexual assault. We further find that that propensity evidence did not contribute to the verdict. In addition to TB's testimony, Appellant corroborated several crucial details of TB's testimony during his interview with AFOSI. TB testified that she confronted Appellant after one of the instances of rape occurred, explaining to him what "marital rape" was after Appellant claimed it was not possible for someone to rape his wife. During his interview, Appellant acknowledged that he did not think he needed consent to have sex with his wife. He also confirmed that on one occasion after he had sex with TB, the topic of "marital rape" just "popped up." When the interviewing agent pressed him for details about what generated the discussion about spousal rape, Appellant claimed they discussed the term after the couple had "great" sex.

TB also described Appellant telling her she owed him sex, her replying that she didn't want to have sex, and then after denying his advances, playing on her phone while he had sex with her in hopes he would lose interest and stop. Appellant admitted that he would initiate sex with TB while she was playing "candy crush" on her phone, but claimed she would get into it after a few minutes of ignoring him and eventually "throw her phone to the side." Appellant acknowledged at least six occasions where TB was playing on her phone when he started to have sexual intercourse with her.

Appellant confirmed he told TB she "owed him sex," he tried to "guilt" TB into sex, TB was good at "guarding herself" when she didn't want sex, and that, at times, she pushed him off when she didn't want sex. Though Appellant initially denied TB ever "ran away" to avoid sex, he later admitted that on more than one occasion she ran out of the room when he went to put on a condom on to avoid having sex with him. He agreed that the couple got into physical fights over sex. He later stated if he was going to rape his wife, it "would have been multiple times." Appellant also confirmed that TB would tell him to watch porn instead of having sex with him and admitted that he watched raped-themed pornography during the couple's marriage.

Our belief that the error did not contribute to the verdict in this case is further supported by the trial counsel's findings argument, during which she referenced only the two instances of *uncharged* sexual acts, evidence still admissible after the *Hills* and *Hukill* decisions. Further, trial counsel did not label these uncharged acts as propensity evidence, but did tell the members they could "consider them" as evidence TB didn't want sexual contact with Appellant. Though the military judge instructed the members concerning the use of the charged evidence as propensity evidence, trial counsel did not invite the members to use the charged offenses in this manner during argument.

Like most sexual assault cases, the evidence in this case was not without conflict, as trial defense counsel confronted TB with potential bias and motive to misrepresent in recounting statements she made to a friend of the couple.

TB agreed she previously said that if Appellant cheated on her she'd kill him, and a witness testified TB said that if Appellant left her, she'd make his life a "living hell." Defense counsel also highlighted a Facebook post where TB wrote, "Hell hath no fury like a woman scorned." Defense counsel pointed out that when the police responded to the couple's apartment on two occasions after reported domestic disturbances, TB told the police and Air Force officials "nothing happened' and that the couple was only "play fighting."

Defense counsel also challenged TB's credibility by noting that despite TB's allegations that Appellant punched, kicked, and choked her, none of the responding police officers or Air Force personnel who went to the apartment observed any visible injuries from the alleged assaults. This was countered by introduction of pictures purporting to show injuries Appellant inflicted upon TB and by Appellant's admissions that he had physically assaulted TB. Despite counsel's efforts to discredit TB, Appellant's repeated false explanations in his interviews demonstrating his consciousness of guilt and his admissions supporting important details of TB's testimony served to counter defense counsel's attacks on TB's testimony.

Finally, one of the most compelling pieces of evidence supporting the convictions comes from Appellant himself. In a video taken from Appellant's cell phone, a female voice in the background states: "you raped [TB]" and in response Appellant appears on the video and states: "yeah sure did, little stupid b***h." During the AFOSI interview while denying he raped TB, Appellant referred to TB as "that stupid a** girl," "that b***h," and that "dumb girl."

We find overwhelming evidence of Appellant's guilt in this case. Appellant's admissions to AFOSI and on the cell phone video, coupled with TB's testimony, Appellant's corroboration of her testimony, and Appellant's consciousness of guilt in his interview lead us to conclude there is no reasonable possibility that the military judge's instructions concerning propensity evidence and the members' consideration of the charged offenses as propensity evidence contributed to Appellant's guilty verdicts. Accordingly, we find that the errors are harmless beyond a reasonable doubt.

## B. Factual Sufficiency of Rape and Sexual Assault Convictions

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

When evaluating factual sufficiency, the test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000);

*United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

To sustain a conviction for rape as charged in Specification 1 of Charge I, the Prosecution was required to prove: (1) That on divers occasions Appellant committed sexual acts upon TB, to wit: penetrating her vulva with his penis; and (2) That Appellant did so by using unlawful force against TB, to wit: holding her down and spreading her legs. Article 120, UCMJ, 10 U.S.C. § 920 (2012).

To sustain a conviction for sexual assault as charged in Specification 2 of Charge I, the Prosecution was required to prove: (1) That on divers occasions Appellant committed sexual acts upon TB, to wit: penetrating her vulva with his penis; (2) That Appellant did so by causing bodily harm to TB, to wit: penetrating her vulva with his penis; and (3) That Appellant did so without his TB's consent. Article 120, UCMJ, 10 U.S.C. § 920 (2012).

The evidence presented at trial, as discussed in detail above, met all of the elements of both the rape and sexual assault offenses. As addressed, TB's testimony was supported by Appellant's AFOSI interview and his admission that he raped TB. Having reviewed the entire record of trial and making allowances for not personally observing the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## C. Bill of Particulars

At trial, Appellant's trial defense counsel requested and received a bill of particulars concerning the rape and sexual assault specifications. Appellant now asserts, for the first time, that the evidence presented at trial varied from the bill of particulars. While the pleadings alleged "divers occasions," the Government's bill of particulars stated that Appellant raped TB "approximately" five to six times and that he sexually assaulted her "approximately" 50 times. Appellant claims the Government only presented evidence of three rapes and three sexual assaults, and that this lack of notice prejudiced his ability to attack TB's credibility at trial. We do not agree.

Whether there was a fatal variance is a question of law reviewed de novo. *United States v. Treat*, 73 M.J. 331, 335 (C.A.A.F. 2014). A variance between pleadings and proof exists when evidence at trial "establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003). To prevail on a fatal variance claim, an appellant must show

both that the variance was material and that it substantially prejudiced him. *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009). A variance is "material" when it "substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense." *Id.*

While an accused is entitled to "fair notice of what he is being charged with," *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011), it is well settled that:

> The military is a notice pleading jurisdiction. Charge(s) and specification(s) will be found sufficient if they, "'first, contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"

*United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (citation omitted).

The purposes of a bill of particulars are to inform the accused of the nature of the charge with sufficient precision to enable the accused to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable the accused to plead the acquittal or conviction in bar of another prosecution for the same offense when the specification itself is too vague and indefinite for such purposes. A bill of particulars should not be used to conduct discovery of the Government's theory of a case, to force detailed disclosure of acts underlying a charge, or to restrict the Government's proof at trial. *See* Rule for Courts-Martial (R.C.M.) 906(b)(6), Discussion.

Here, there is no issue as to whether the specifications themselves were sufficient or whether there was fatal variance between the specifications and the findings. Instead, Appellant points to variance between the bill of particulars he was provided and proof presented at trial. But the only variance was that the Government at trial proved *fewer* occasions of rape and sexual assault than the approximate number it had provided in its bill of particulars. This did not change the nature, seriousness, or the maximum punishment of the offenses and there is no showing that it frustrated Appellant's ability to prepare for trial. Because Appellant has failed to show that any variance was material and prejudicial, his claim fails.

**D. Evidence of Appellant Watching Rape-themed Pornography**

During Appellant's AFOSI interview, Appellant admitted to watching rape-themed pornography. Additionally, he stated that sometimes TB would tell him to go watch pornography or he would "finish off" with pornography when the couple was having sex. TB confirmed that she told Appellant to go watch pornography or "finish" with pornography to avoid having sex with him. After

the Government filed notice to admit this evidence pursuant to Mil. R. Evid. 404(b), trial defense counsel moved the military judge to rule on its admissibility. After hearing argument, the military judge issued a written ruling admitting the statements concerning the rape-themed pornography. Appellant now avers the military judge abused his discretion by admitting this evidence and asks the court to set aside the findings pertaining to his convictions for violations of Article 120, UCMJ, along with the sentence imposed. We disagree.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). When a military judge articulates the balancing test under Mil. R. Evid. 403 on the record, the ruling will be overturned only if there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citing *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)). The military judge receives less deference if he fails to articulate the balancing test on the record, and no deference if he fails to conduct balancing under Mil. R. Evid. 403. *Id.*

A three-part test is used to determine whether uncharged acts are admissible under Mil. R. Evid. 404(b):

> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
>
> 2. What fact . . . of consequence is made more or less probable by the existence of this evidence?
>
> 3. Is the probative value . . . substantially outweighed by the danger of unfair prejudice?

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (internal quotations and citations omitted). *See also* Mil. R. Evid. 401, 402, 403. If any part of the test fails, the evidence is inadmissible. *United States v. Humpherys,* 57 M.J. 83 (C.A.A.F. 2002) (citing *United States v. Cousins*, 35 M.J. 70, 74 (C.M.A. 1992)).

Mil. R. Evid. 404(b) is a rule of inclusion. *Humpherys*, 57 M.J. at 90. It prohibits the admission of evidence "to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989). The evidence may be admissible for other purposes, such as to prove an accused's intent or motive to commit a crime, as well as other permissible purposes specified in Mil. R. Evid. 404(b). Relevant evidence does not need to "fit snugly into a pigeon hole provided by Mil. R. Evid. 404(b)." *Castillo*, 29 M.J. at 150.

Here, the military judge's written ruling correctly applied the *Reynolds* test, finding each prong was met, and explaining that "although forcible rape as it has been charged" does not contain a specific intent element, evidence of Appellant's "intent could be relevant in making a determination as to whether any claimed mistake of fact as to consent has been established." Trial defense counsel conceded there was evidence that Appellant watched rape-themed pornography, but argued that the evidence was inadmissible under Mil. R. Evid. 404(b) because it failed the second and third prongs of the *Reynolds* test. Senior Trial Counsel countered that the evidence showed Appellant's intent, motive, and plan. The military judge ruled that "evidence of an interest in rape themed pornography would make a fact of consequence [more probable], specifically that the accused had an interest in forcible sexual intercourse which could be utilized to counter or eliminate a possible mistake of fact as to consent defense." Then, the military judge conducted a Mil. R. Evid. 403 balancing test and found that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

The evidence demonstrates Appellant watched raped-themed pornography during the time frame he allegedly raped and sexually assaulted his then-spouse. The military judge properly applied the *Reynolds* test and also conducted a Mil R. Evid. 403 balancing test prior to admitting the evidence. We find no abuse of discretion in allowing evidence that Appellant watched rape-themed pornography for the purposes of potentially proving the accused had an interest in forcible sexual acts and also to eliminate a mistake of fact as to consent defense which was at issue at the trial.

**E. Article 31 Rights Advisement**

Appellant avers his statement to AFOSI should have been excluded because AFOSI agents failed to properly advise him of the offenses of which he was suspected. Prior to questioning Appellant, AFOSI agents advised him he was suspected of rape and wrongful use of marijuana. Appellant was not advised he was suspected of assault consummated by battery, an offense agents questioned him about during his interview. Appellant's contention is that after reading him his Article 31, UCMJ, rights, AFOSI declined to inform Appellant whom he had allegedly raped, instead asking him to guess the identity of his victim. Despite Appellant's failure to object to the admission of his interview at trial, he asks us to analyze his alleged error using a plain error standard, citing the court to *United States v. Gray*, 51 M.J. 1, 26 (C.A.A.F. 1999) and *United States v. Erickson*, 65 M.J. 21, 223 (C.A.A.F. 2007). We decline and find he waived the issue.

Whether an accused has waived an issue is a question of law reviewed de novo. *United States v. Rosenthal,* 62 M.J. 261, 262 (C.A.A.F. 2005). Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the

intentional relinquishment or abandonment of a known right. *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F 2005) (internal quotation marks omitted) (quoting *United States v. Olano,* 507 U.S. 725, 733 (1993)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the accused's choice must be particularly informed or voluntary, all depend on the right at stake." *Girouard,* 70 M.J. at 10 (quoting *Olano*, 507 U.S. at 733) (internal quotation marks omitted).

Mil. R. Evid. 304(f)(1) states:

> Motions to suppress or objections under this rule, or Mil. R. Evid. 302 or 305, to any statement or derivative evidence that has been disclosed must be made by the defense prior to submission of plea. In the absence of such motion or objection, the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown. *Failure to so move or object constitutes a waiver of the objection.*

(Emphasis added.)

The CAAF recently examined the effect of failing to raise a motion or objection to a statement under Mil. R. Evid. 304. *United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017). It noted that the rule plainly states claims arising under Mil. R. Evid 304 are waived absent objection and that "this is not a case where the rule uses the word 'waiver' but actually means 'forfeiture.'" *Id.* at 197. Mil. R. Evid. 304(f)(1) does not mention plain error review, and instead unambiguously provides that any claim arising under Mil. R. Evid. 304 is waived absent an objection. Ordinarily, appellate courts "do not review waived issues because a valid waiver leaves no error to correct on appeal." *Ahern*, 76 M.J. at 197 (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)). However, we recognize that this court is permitted, under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to review issues affirmatively waived by an appellant at trial. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) ("CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error."). Appellant did not object to the admission of his interview at trial. After having reviewed the entire record, we leave Appellant's waiver of this issue intact.

## F. Trial Counsel's Findings Argument

Appellant asserts trial counsel engaged in prosecutorial misconduct during closing argument by calling Appellant a liar and by asking the members to imagine they were TB. We disagree.

Improper argument is a question of law that is reviewed de novo. *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011). Because there was no objection

at trial, we review the propriety of trial counsel's argument for plain error. *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013). To prevail under a plain error analysis, Appellant must show "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). This rule exists "to prevent defense counsel from remaining silent, making no objection, and then raising the issue on appeal for the first time, long after any possibility of curing the problem has vanished. It is important to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Reist*, 50 M.J. 108, 110 (C.A.A.F. 1999) (internal quotation marks omitted).

It is well established that while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *United States v. Frey*, 73 M.J. 246, 248 (C.A.A.F. 2014) (quoting *Berger v. United State*s, 295 U.S. 78, 88 (1935)). Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Counsel are to limit arguments to evidence in the record and reasonable inferences that can be drawn from that evidence. *Id.*. "[I]t is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (omission in original) (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)). Trial counsel are also prohibited from injecting into argument irrelevant matters, such as facts not in evidence or personal opinions about the truth or falsity of testimony or evidence. *Id.* at 58; *Fletcher*, 62 M.J. at 179; R.C.M. 919(b), Discussion. To that end, courts have struggled to draw the "exceedingly fine line which distinguishes permissible advocacy from impermissible excess." *Fletcher*, 62 M.J. at 183 (quoting *United States v. White*, 486 F.2d 204, 207 (2d Cir. 1973)).

In closing argument, trial counsel, while detailing Appellant's falsehoods during his AFOSI interview, referred to him on one occasion as a "liar." In the interview, Appellant repeatedly stated he did not physically abuse his wife, but later admitted to the interviewing agents he had hit, punched, and kicked her in the face. Appellant denied choking TB, but later admitted he had choked her, but claimed she had faked passing out as a result of him choking her neck. Appellant initially told AFOSI that TB never pushed him off during sex, but later admitted TB did push him off when she didn't want to have sex with him. Appellant also stated that TB never ran away from him during sex; however, he later admitted that she did run away from him when she didn't want to have sex. Appellant even gave a false explanation about how he met TB, telling investigators he met TB at college in Arizona when in fact they met online.

Finally, Appellant repeatedly denied raping TB; however, in a video, he admitted to raping her.

While counsel should certainly be cautious in labeling an accused a "liar" during argument, in this case, the term was a reasonable comment on Appellant's AFOSI interview, which contained so many false or misleading statements, that the military judge instructed the members concerning the false explanations made by Appellant. We find no error in this argument, plain or otherwise. Even if counsel's argument could be considered error, we find no prejudice to a substantial right of Appellant.

Appellant next asserts that it was plain error for trial counsel to improperly request that the members put themselves in the place of the victim by asking them to imagine they were at the scene of the alleged offense.

At various points during closing argument, trial counsel, without objection, asked the members to imagine a scene as she described it:

> When they are in the hotel, we have the first incident that happens. He wants that sex again. We can see from that video, he certainly thinks that he is entitled to that right, members? *Could you imagine* someone saying those things to you? "Give me sex. You owe me sex. I am taking sex from you."
>
> . . . .
>
> She tells you that's her best defense mechanism, because that is one of her strongest features. When he comes after her, she will kick, because that's all she has. She starts to kick him away, and she gets up on the bed, and he is mad. I mean, members, you saw him screaming in that interview. *Can you imagine* being in an apartment, in a tiny bedroom with that voice coming at you? He had [making sounds] ggrkk, ggrkk, ggrkk [punching and elbow motions to the head] elbowed her right in the head, to the point that it was so bad, it busted her head open. There was blood. She gets up, and she's, as *you can imagine*, dizzy, kind of out there. He comes towards her and she [making sounds] ggrkk, grabs his hand or bites his hand and wants him to get away. I mean, do you want someone coming towards you after they just [making sounds] ggrkk, right in your head and they busted your head open?
>
> . . . .
>
> She sees the blood on his face from her head, and she goes like this [demonstrating something] and she freaks out. *We can imagine* that. I mean, your head is bleeding and busted open, and

you see it. So she goes back into the bathroom. She puts her head in the tub and she is trying to wash the blood out. So what does he say? "Oh, you're fine. Stop whining. Get over it."

. . . .

The agent starts talking about the stepdad and he goes berserk. So *can you imagine* being in the apartment, in a kitchen, standing up against the wall, and she says something about his stepdad, and you get that on the other end? He takes his forearm and he puts it up there, and he chokes her. But do you know how we know that he did it? When she didn't do a single thing? Because in the interview, he admits it. He [pointing to the accused] admits that he choked her.

Emphasis added.

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation but on the argument as 'viewed in context.'" *Baer*, 53 M.J. at 238 (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). "[I]t is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.* We disagree with Appellant's assertion that trial counsel's argument impermissibly asked the members to put themselves in the victim's shoes. Trial counsel appropriately asked the members to visualize the offenses as they happened, as an outsider looking in. While trial counsel vividly described Appellant's actions, this is substantively distinct from asking the members to put themselves in the victim's place. *See Baer*, 53 M.J. at 237–38 (distinguishing between asking members to imagine themselves in the place of a victim and asking them to imagine a victim's fear or pain). Thus, trial counsel's proper comments did not result in error, plain or otherwise. Again, even assuming *arguendo* counsel's argument to be error, we find no prejudice to Appellant.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED.**

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

17