**UNITED STATES**

v.

**Technical Sergeant William R. GREEN, United States Air Force.**

**ACM 35635.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 May 2003.

19 Sept. 2005.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Major Antony B. Kolenc.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Colonel Michael J. Cianci, Jr., and Lieutenant Colonel Robert V. Combs.

Before STONE, SMITH, and MATHEWS, Appellate Military Judges.

OPINION OF THE COURT

MATHEWS, Judge:

The appellant stands convicted, contrary to his pleas, of desertion, in violation of Article 85, UCMJ, 10 U.S.C. § 885. On appeal, he asserts that the instructions given the panel of officer and enlisted members at his general court-martial muddied the distinction between the standard of "clear and convincing" evidence and proof "beyond a reasonable doubt." Finding merit under the unusual circumstances of this case, we grant relief.[1]

1. The appellant raised three additional assign-      ments of error, however, we do not address these

## Background

The appellant was a noncommissioned officer with 19 years and 6 months on active duty. He was assigned to the United States Air Forces in Europe Operational Weather Squadron at Sembach Air Base, Germany. His first sergeant described him as a very good worker, who was respected in his flight and had never been in any disciplinary trouble, but who recently had experienced a spate of financial difficulty. On 15 August 2002, the appellant did not show up for a scheduled financial counseling session or for his duty shift later that day. Despite the best efforts of his unit to find him, his whereabouts remained unknown for several weeks.

A German civilian spotted the appellant on 16 October 2002 at a convenience store in a suburb of Frankfurt, Germany. According to the civilian, the appellant "looked like a homeless person who had not had a bath for quite some time." His "clothes appeared dirty as if they had not been changed in a long time," and he "had a messy beard and dirty fingernails." The appellant was apprehended stealing a package of chocolate covered hazelnuts and a bottle of cocoa, but was subsequently released on his own recognizance after producing a military identification card. According to evidence introduced at trial, the appellant resumed wandering from place to place, living on the streets, and eating from garbage cans.

On 23 November 2002, the appellant was again spotted, this time by an officer of the German Federal Border Police at the main train station in Frankfurt. The officer described the appellant as "dirty and unkempt," "had a beard that was greasy and not well kept," "smelled bad," had on "several layers of clothing," and "looked as if he had not washed for a long time." The police officer stated that the appellant was at no time uncooperative, and when asked for identification, again presented his military identification card. This time, the appellant was taken into custody and returned to military control.

remaining issues.

## Trial

At trial, there was little dispute as to the basic events that led to the appellant's court-martial—the parties agreed to two stipulations of fact and two stipulations of expected testimony that effectively summed up the case. Where the parties differed sharply was on the question of the appellant's mental responsibility. The trial defense counsel presented a number of witnesses and documents to establish a conventional "good soldier" defense, in a clear effort to demonstrate that the appellant would not have wandered off to live on the streets had he been of sound mind.

Trial defense counsel then attempted to show that the appellant's aberrant behavior was the result of a mental disease or defect. They called Dr. Craig Rath, who testified that at the time of the appellant's absence from his unit, the appellant suffered from a "dissociative fugue state," a medically recognized condition in which the victim under stress experiences a temporary break with reality. His conclusions differed from those of the sanity board convened under the provisions of Rule for Courts–Martial (R.C.M.) 706, although he relied on much of the same evidence. He also conducted some additional testing and interviews with the appellant to make his diagnosis.

The government countered with the testimony of Dr. (Captain) Barrie Highby, a clinical psychologist and the primary author of the R.C.M. 706 sanity board report. She acknowledged that, unlike Dr. Rath, she had never personally seen or treated a patient suffering from a dissociative fugue state, but nonetheless concluded that the appellant did not suffer from such a condition. She opined instead that the appellant was probably malingering, by making up or exaggerating symptoms. On cross-examination, she admitted that, of the battery of psychological tests administered during the sanity board process, only one specifically tested for malingering—and on that test, the appellant registered the highest possible result indicative of *not* malingering. Nonetheless, she remained unshakeable in her conviction that

the appellant's conduct was not the result of a mental disease or defect.

The military judge gave the members the standard instructions on mental responsibility contained in the Department of the Army Pamphlet (D.A. Pam.) 27–9, *Military Judge's Benchbook*, ¶ 6–4 (15 Sep 2002), advising them that the appellant was "presumed to be mentally responsible" for his acts. The military judge properly instructed the members that they would only be required to consider the appellant's sanity if they first found him guilty of desertion or a lesser-included offense, and that if they reached that point, the appellant would have to carry the burden of proving lack of mental responsibility by clear and convincing evidence.

### Discussion

■ The burden of proving a lack of mental responsibility rests with the accused, who must prove his lack of responsibility by "clear and convincing" evidence. Article 50a(b), UCMJ, 10 U.S.C. § 850a(b). "Clear and convincing" evidence is an intermediate standard of proof, lying between "preponderance of the evidence" and "proof beyond a reasonable doubt." *United States v. Dubose*, 47 M.J. 386, 388 (C.A.A.F.1998).[2]

The military judge at trial read the standard instruction defining "clear and convincing" evidence as "proof which will produce ... a firm belief or conviction as to the facts sought to be established." D.A. Pam. 27–9, ¶ 6–4. After reading this definition, the military judge went on to give the Air Force's tailored definition of "proof beyond a reasonable doubt" in the context of establishing the appellant's guilt, as "proof that leaves you firmly convinced of the accused's guilt." The appellant does not challenge the legal sufficiency of the individual definitions provided by the military judge, but instead contends that when considered in tandem they are misleading, because they are semantically

identical: an ordinary court member would not be able to distinguish between the quantum of evidence needed to produce a "firm belief or conviction" and that needed to leave them "firmly convinced."[3] He argues that he was entitled to have the members correctly apprised of the fact that his burden was less stringent than the government's.

■ The question of whether the members were properly instructed is a matter of law reviewed de novo. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F.1996) (citing *United States v. Snow*, 82 F.3d 935, 938–39 (10th Cir.1996)). "Appropriate instructions means those instructions necessary for the members to arrive at an intelligent decision concerning appellant's guilt." *United States v. Baker*, 57 M.J. 330, 333 (C.A.A.F.2002). Although it is undisputed that the military judge followed the pattern instructions in DA. Pam. 27–9, as well as the instruction from the Air Force's version of reasonable doubt, it is proper to analyze whether those instructions, taken as a whole, gave the members sufficient direction as to the law to be applied in the appellant's case.

During his prefatory instructions to the members, the military judge advised them that "proof beyond a reasonable doubt" is a more stringent standard than the "preponderance" standard generally applicable in administrative hearings. As the appellant complains, the members were never similarly advised of the relationship between "clear and convincing evidence" and "proof beyond a reasonable doubt." Given the semantic similarity between the two instructions, it was critical to instruct the members on how to differentiate between the two standards of proof. The appellant claims that the military judge's failure to provide such a clarifying instruction left the members without an adequate basis to distinguish between the gov-

---

2. Courts have endorsed a number of formulations for the meaning of "clear and convincing" evidence, including "a high probability." *United States v. Owens*, 854 F.2d 432, 436 (11th Cir. 1988). The language used by D.A. Pam. 27–9 is consistent with *United States v. Martin*, 56 M.J. 97, 103 (C.A.A.F.2001).

3. The negative examples in the D.A. Pam. 27–9 instructions are no more helpful in distinguishing between the two standards: "Clear and convincing" evidence does not have to be "unanswerable or conclusive evidence," while "proof beyond a reasonable doubt" need not be "proof that overcomes every possible doubt." D.A. Pam. 27–9, ¶ 6–4; Air Force Supplement to D.A. Pam. 27–9.

ernment's burden of proof and the one he needed to carry in his insanity defense.

 Although lawyers may be familiar with the various burdens of proof, court members are not; it is the responsibility of the military judge to ensure that the distinction between these burdens of proof is made clear to the members. Just as it is essential to give the members instructions sufficient to permit them to arrive at an intelligent decision concerning an accused's guilt, we conclude it is essential to give them instructions sufficient to make an intelligent decision concerning affirmative defenses. When the "clear and convincing" standard is employed, the military judge must, at a minimum, clearly instruct the members that it is an intermediate standard: higher than a mere probability, but not so high as "proof beyond a reasonable doubt." [4]

 Having concluded that the instructions on this question did not adequately inform the members on how to discharge their duties, we test for prejudice. Here, the question of the appellant's mental health was *the* key issue before the court-martial; the parties stipulated their way out of nearly every other area of contention. The appellant's claim of lack of mental responsibility was not merely a speculative conjecture, but instead had an obvious grounding in the facts of the alleged offense itself—one would be hard-pressed to explain the appellant's wretched condition without considering the real possibility of a mental disorder—backed by the testimony of a formidable expert. Given the central importance of this issue at trial, failure to adequately advise the members amounted to "prejudicial plain error." *United States v. Kasper,* 58 M.J. 314, 320 (C.A.A.F.2003). Considering the entire record, we conclude this error requires relief. *See generally United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). We therefore need not address the remaining assignments of error.

*Conclusion*

The findings and sentence are set aside. The record of trial is returned to The Judge Advocate General for remand to the convening authority. A rehearing may be ordered.

---

4. Although it is sufficient to properly advise the members prior to their closed-session deliberations, the need for an instruction on "clear and convincing" evidence will often be apparent at the beginning of the trial. Where this is so, the members would be well-served during the prefa-tory instructions by further use of a tailored instruction distinguishing between the various burdens of proof, in the place of the standard language which describes only "preponderance" and "proof beyond a reasonable doubt."