# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39280**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Anthony R. LIZANA**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 July 2018

———————————

*Military Judge:* Shelly W. Schools (arraignment); Andrew Kalavanos.

*Approved sentence:* Dishonorable discharge, confinement for 3 months, hard labor without confinement for 9 days, forfeiture of $450 pay per month for one month, and reduction to the grade of E-3. Sentence adjudged 25 February 2017 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Lieutenant Colonel Nicholas W. McCue, USAF; Captain Meghan Glines-Barney, USAF; Brian L. Mizer, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DENNIS, Judge:

Contrary to his pleas, Appellant was convicted of two specifications of willfully failing to maintain a professional relationship, one specification of negligently failing to maintain a professional relationship, one specification of aggravated sexual assault, one specification of assault consummated by a battery, two specifications of adultery, and two specifications of providing alcohol to minors, in violation of Articles 92, 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 928, 934.[1] Officer and enlisted members sentenced Appellant to a dishonorable discharge, confinement for three months, hard labor without confinement for one month, forfeiture of $450 pay per month for one month, and reduction to the grade of E-3. The convening authority approved only nine days of the adjudged hard labor without confinement, but otherwise approved the sentence as adjudged.

Appellant raises a total of seven issues on appeal: (1) whether the military judge erred in excusing a panel member over defense objection; (2) whether there was an improper exclusion of medical personnel from serving on Appellant's court-martial panel; (3) whether a member of Appellant's court-martial was improperly excused after the court was assembled; (4) whether the evidence is factually sufficient to establish the penetration element of sexual assault where the victim testified that Appellant may or may not have penetrated her vulva; (5) whether the Staff Judge Advocate (SJA) erroneously advised the convening authority that she did not have the authority to dismiss the allegation of sexual assault under Article 60, UCMJ; (6) whether the military judge provided an erroneous reasonable doubt instruction; and (7) whether the military judge abused his discretion in admitting uncharged misconduct.

We find Appellant's sexual assault conviction factually insufficient, but affirm the lesser-included offense of abusive sexual contact. We affirm the other findings of guilt and set aside the sentence.[2]

---

[1] Appellant was acquitted of one specification of willfully failing to maintain a professional relationship, two specifications of maltreatment, two specifications of abusive sexual contact, one specification of aggravated sexual assault, and three specifications of assault consummated by a battery, in violation of Articles 92, 93, 120, and 128, UCMJ, 10 U.S.C. §§ 892, 893, 920, 928.

[2] The SJA's recommendation included the following footnote:

> The convening authority does have the authority to disapprove findings for offenses committed before 24 June 2014. While the charged timeframe for Additional Charge II is 1 April 2014 – 1 August 2015, evidence was elicited at trial that 1) the accused did not arrive at 59

*(Footnote continues on next page)*

## I. BACKGROUND

Appellant arrived at Joint Base San Antonio-Lackland in 2014. While serving as the noncommissioned officer in charge of the Medical Logistics Warehouse, Appellant soon developed a reputation for engaging in inappropriate behavior with female Airmen under his charge and other female Airmen subordinate in rank. One of the Airmen reported Appellant's behavior to the Air Force Office of Special Investigations. The investigation revealed misconduct ranging from providing alcohol to female Airmen under the age of 21 to sexual assault, and ultimately led to the case before this court.

## II. DISCUSSION

### A. Panel Member Selection and Excusal

Appellant asserts that his court-martial was improperly convened. Underlying his assertion are three issues pertaining to the selection and excusal of his panel members: (1) whether the military judge erred in excusing a panel member over defense objection; (2) whether there was an improper exclusion of medical personnel from serving on Appellant's court-martial panel; and (3) whether a member of Appellant's court-martial was improperly excused after the court was assembled. Each of these allegations is based on a series of events that occurred after a member of Appellant's panel became ill. We begin with a detailed summary of the facts giving rise to these issues.

#### 1. Additional Facts

Appellant's court-martial was assembled on Friday, 17 February 2017, after a panel of five officers and five enlisted members was sworn. Following an extensive voir dire, one officer and four enlisted members were empaneled to serve on Appellant's court-martial. The military judge instructed the panel to report to the deliberation room the following Monday. Over the weekend, one of the panel members, Chief Master Sergeant (CMSgt) EG, began experiencing what he described as "severe pain" in his neck. Thinking the pain would resolve, he did not seek medical attention. When he awoke on Monday, the

---

MLRS until June 2014 and 2) that the kissing occurred on . . . 26 July. Therefore, and in light of the punitive discharge, the convening authority cannot disapprove the findings for Additional Charge II.

Though our decision to set aside Appellant's sentence renders moot the issue regarding the SJA's post-trial advice to the convening authority, we note the obvious and conceded error in applying Article 60, UCMJ, 10 U.S.C. § 860, based on evidence elicited at trial rather than on the charged timeframe. *See* Note to Rule for Courts-Martial (R.C.M.) 1107.

pain had not subsided, and he began feeling numbness in his left arm. Nevertheless, he reported to the deliberation room as instructed to ask whether he could seek medical attention. The military judge granted his request.

While CMSgt EG was seeking medical treatment, the military judge informed the Government that "because getting new members detailed to a court often doesn't turn on a dime, that they may want to consider starting those wheels to get that turning." He further instructed them to keep him apprised as to "where we were in the event excusal occurred." The deputy staff judge advocate (DSJA), apparently under the impression that CMSgt EG had been excused, then engaged with the base legal office about preparing a member replacement package for the convening authority.

In preparing the package, the DSJA informed the SJA that the panel had fallen below quorum.[3] The SJA then requested that the deputy provide her with "vital statistics on who's left." The SJA learned that three of the four remaining members were from the medical career field and that there were one major and three master sergeants remaining. At approximately 1159 on 20 February 2017, she submitted the member replacement package to the convening authority via electronic mail. The package included a document entitled "Busted Quorum Replacement Members Package" and court member data sheets for eight potential replacement members. The body of the SJA's message read:

> Ma'am,
>
> US v. Lizana is underway at JBSA-Lackland. The law requires at least 5 members. We are down to four because of an injury.
>
> One [sic] jury right now we have 3 MSgt and one Major. Three of the four are medical career fields.
>
> [The names of eight additional members were listed.]
>
> They are all available. You have the option, as always, to select anyone qualified to serve under the UCMJ.
>
> The accused asked for 1/3 enlisted. With that in mind, I recommend that you select 3 enlisted and one officer OR two enlisted and 2 officers.
>
> Standing by for questions – all the normal paperwork in [sic] attached.

---

[3] The quorum required for a general court-martial is five members. Article 29(b)(2), UCMJ, 10 U.S.C. § 829(b)(2).

At approximately 1203, the convening authority responded with the names of four individuals from the list the SJA provided. The names were then included on a new convening order, Special Order A-10, dated 20 February 2017. CMSgt EG had not yet been excused. At some point after the production of Special Order A-10, the SJA excused one of the members selected, Master Sergeant (MSgt) HB. Upon receipt of the new convening order and the excusal memorandum, trial defense counsel filed a Motion to Compel Discovery – Court Member Selection and a Motion to Declare Mistrial, both dated 20 February 2017.

The court-martial reconvened Tuesday morning, 21 February 2017. Trial counsel informed the court that CMSgt EG had engaged in a text message conversation with the case paralegal on Monday evening. The text message from CMSgt EG read:

> Right now the pain is quite unbearable. Bottom line, I am not on quarters, the Valium has me feeling out of it, and I do not feel that I could stay as focused as I would like to. I truly apologize for the inconvenience, but I am not able to give 100% at this time. Pending any other questions and guidance. FYI, I have to follow-up with my PCM in about 3 days if not getting better. I will stand by for your guidance in morning. Thanks again for working with me ma'am.

Trial counsel then asked that CMSgt EG be excused. Trial defense counsel objected and requested further inquiry. When CMSgt EG reported to the witness stand, the military judge noted that he appeared to be in pain. The military judge also inquired why CMSgt EG had not been placed on quarters. In response, CMSgt EG indicated that the Valium was "all they could do for him" because they could not confirm what was causing the pain. He added, "They did ask me what I did specifically, and since I'm the superintendent of the squadron, they figure[d] that I'm going to be on a computer and . . . I think that's how they based why they didn't put me on quarters." CMSgt EG also confirmed that he had recently taken the Valium and that it made him "drowsy" and feel "a little drunk." When asked whether the Valium was helping, CMSgt EG said that he was informed it would take about two to three days if it was a neck or muscle injury. The military judge then had the following exchange with CMSgt EG:

> [MJ]. With how you're feeling, do you think that you are able to sit as a court member? Do you think that you will be able to sit and focus on the witnesses and the evidence and the instructions on the law with how you are feeling?

[CMSgt EG]. Sir, my honest filling [sic], like I said, is very --
and you know with as much time as it is -- and I told the para-
legal, I believe -- I will do anything that you all ask of me, Sir,
and I'll do it with full integrity. It's just, you know, I want to let
you all know up front with the medication, you're not going to
get 100 percent because it's just hard.

[MJ]. So let me ask you this question. If you were -- this was
your court-martial and you were accused of a crime, how would
you feel about someone in your condition right now sitting as a
court member?

[CMSgt EG]. I think it would be -- personally, I feel it's unfair
to both sides. I just think -- is just unfair. I'm not going to give
you the 100 percent and you're asking me to do this, but like I
said, if you ask me, I will probably do whatever you asked me
to do, Sir.

The Defense maintained its objection following this exchange, arguing
that CMSgt EG had not been placed on quarters and that there had been "no
showing that a reasonable delay in this case would not put him back to be
able to sit here as a member of this court-martial." After hearing additional
argument from counsel for both sides, the military judge then excused CMSgt
EG due to his "medical difficulties."

After CMSgt EG was excused, the military judge found that because the
convening authority did not have the authority to issue the 20 February 2017
convening order, it was a legal nullity. He also found that the subsequent
memorandum excusing MSgt HB was also null and void.

A new Special Order A-10 was accomplished the same day, 21 February
2017. It contained three of the four names on the original Special Order A-10.
MSgt HB's name was not listed.

On 11 April 2018, this court granted the Government's motion to attach
declarations from the convening authority and the SJA. The SJA's declara-
tion contained several attachments, including two memoranda with the sub-
ject "Appointment of Additional Court Members" dated 20 and 21 February
2017, respectively.[4] The 21 February 2017 memorandum included a list of

---

[4] We note that both the 20 February and 21 February 2017 memoranda contain ref-
erence to the authority to replace panel members in accordance with "R.C.M.
505b(2)(B)." This appears to be an administrative error as R.C.M. 505(c)(2)(B) pro-
vides such authority. We find no prejudice. *See United States v. Adams*, 66 M.J. 255,
259 (C.A.A.F. 2008).

seven names. The convening authority's initials appeared next to the three names later detailed to Appellant's court-martial through the 21 February 2017 convening order.

Counsel for both parties were given the opportunity to question and challenge the additional members. Neither party exercised a challenge. The military judge denied Appellant's request for a mistrial and sat the combined panel on 22 February 2017.

**2. Discussion**

As previously noted, these facts led to three assignments of error. We address each in turn.

### a. Excusing CMSgt EG over defense objection.

Appellant asserts that CMSgt EG should not have been excused over defense objection. He argues that the military judge should have instead granted the defense request for a continuance. We disagree.

We begin by resolving a dispute over the appropriate standard of review. While we acknowledge that there is a different set of criteria to excuse a member after assembly than there is to excuse a member for cause during panel selection, both require the military judge to assess whether good cause exists for the excusal. R.C.M. 505(c)(2)(A) and R.C.M. 912(f). We review such decisions for an abuse of discretion. *See United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002) (additional citation omitted)).

R.C.M. 505(c)(2)(A) provides for the excusal of a member after assembly for good cause. "'Good cause' includes physical disability, military exigency, and other extraordinary circumstances which render the member . . . unable to proceed with the court-martial within a reasonable time." R.C.M. 505(f). The rule also makes it clear that "'[g]ood cause' does not include temporary inconveniences which are incident to normal conditions of military life." *Id.* Appellant argues that good cause did not exist to relieve CMSgt EG. As outlined above, CMSgt EG's physical disability was well established on the record and requires little discussion. Although he was not placed on quarters, his testimony that he was unable to offer "100 percent" as a court member and that the medication he was taking to alleviate his pain made him feel "a little drunk" was more than enough for the military judge to find good cause under R.C.M. 505(c)(2)(A). Indeed, we have approved excusals with far less justification. *See United States v. Dunston*, No. ACM 26243, 1987 CMR LEXIS 820, at *4–6 (A.F. Ct. Crim. App. 23 Nov. 1987) (unpub. op.) (holding that the military judge did not abuse his discretion in excusing a member who, during deliberations, reported feeling faint and nauseous and, despite feeling better, asked to be excused.).

The remaining question is whether CMSgt EG's ailment could be resolved within a "reasonable time." CMSgt EG's testimony on when his medical issue would be resolved was at best uncertain. CMSgt EG repeatedly indicated that his providers could not specify the cause for his pain and thus could not specify when the pain would resolve. When asked whether it was going to get better within a couple of days, CMSgt EG responded that he was not sure. The military judge was not required to grant a continuance on such a tenuous possibility. He did not abuse his discretion in excusing CMSgt EG.

### b. Exclusion of medical personnel.

Appellant asserts that the SJA's message to the convening authority that three of the four remaining court members were from the medical career field was an attempt to stack the court. Specifically, Appellant claims that medical personnel were improperly excluded from serving on Appellant's court-martial. We find no merit in this assertion.

Whether a panel was properly selected is a question of law we review de novo. *United States v. Dowty*, 60 M.J 163, 171 (C.A.A.F. 2004). In *Dowty*, the Court of Appeals for the Armed Forces (CAAF) specified three factors to be considered in "evaluating the propriety of any screening of servicemembers for eventual consideration by the [convening authority] for court-martial service." *Id*. The three factors are: (1) whether there was an improper motive to pack the member pool; (2) whether there was a systemic exclusion of otherwise qualified potential members based on an impermissible variable such as rank, race, or gender; and (3) whether there were good faith attempts to be inclusive and to require representativeness so that court-martial service is open to all segments of the military community. *Id*. (citations omitted); *see United States v. Gooch*, 69 M.J. 353, 358 (C.A.A.F. 2011).

Applying these factors to Appellant's case, we find no evidence of improper member selection. Article 25(d)(2), UCMJ, requires a convening authority to detail members who are "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." 10 U.S.C. § 825(d)(2). The SJA testified that she collected and provided information on the remaining members of the panel to assist the convening authority in satisfying the Article 25, UCMJ, criteria:

> What I have found with convening authorities in general, including with General Pringle, is that they tend to like to see a lot of different career fields, a lot of different ranks represented so that they feel like there's not all just one group of people who are doing it; not all lieutenants, not all whatever. Sometimes does that happen? Sure, it does. But she does, in replacement

members, like to try to have a variety of people with a variety of experiences qualified under the UCMJ to hear a case.

The SJA further testified that it was part of her practice to prepare for such an inquiry from the convening authority. We do not find that the SJA informing the convening authority that three of the four members who remained on the panel were in the medical career field was done with an improper motive to pack the member pool. Rather, the SJA was simply providing information she believed the convening authority would need to select panel members in accordance with Article 25, UCMJ. Likewise, there is no evidence that identifying how many members were in the medical career field resulted in a systemic exclusion of otherwise qualified members based on an impermissible variable. Appellant relies on *United States v. Reisbeck*, 77 M.J. 154, 158 (C.A.A.F. 2018), where the CAAF dismissed the charges after finding that the member selection process "utilized gender as an important selection criterion." But Appellant's reliance on *Reisbeck* is inapposite because, unlike gender, training and experience is a permissible factor for the convening authority to consider under Article 25, UCMJ. Consideration of the represented career fields on the panel was not improper.

Most notably, the SJA did not direct the convening authority to avoid selecting members of the medical career field or any other qualified servicemember. She simply stated, "You have the option, as always, to select anyone qualified to serve under the UCMJ." On these facts we find no evidence that the panel was improperly selected.

### c. Excusing MSgt HB after assembly.

In his final claim regarding the constitution of his panel, Appellant asserts that his court-martial is void because only three of the four members selected by the convening authority were appointed to serve on Appellant's court-martial. For the reasons set forth below, we disagree.

R.C.M. 505(c)(2)(B) provides:

> New members may be detailed after assembly only when, as a result of excusals under subsection (c)(2)(A) of this rule, the number of members of the court-martial is reduced below a quorum, or the number of enlisted members, when the accused has made a timely written request for enlisted members, is reduced below one-third of the total membership.

The military judge applied this rule and properly found that the Special Order A-10, dated 20 February 2017, was null and void. Appellant argues that even if the original version of Special Order A-10 was void, "the record reflects the unambiguous intent of the [convening authority] that MSgt HB serve on [Appellant's] court-martial." But the 21 February 2017 memoran-

dum now attached to the record appears to reflect a different intent, namely, the convening authority's unambiguous intent to personally select three members other than MSgt HB. Although MSgt HB's name did not appear on the 21 February 2017 memorandum, the convening authority was given the opportunity to select any other qualified individual. The convening authority did not choose to list MSgt HB. We find that the 21 February 2017 memorandum reflects the personal selections made by the convening authority in accordance with Article 25, UCMJ, and R.C.M. 505(c)(2)(B). Stated another way, Appellant's court-martial was properly convened.

## B. Factual Sufficiency of Sexual Assault Charge

Appellant asserts that the evidence is factually insufficient to sustain his conviction for aggravated sexual assault. Specifically, he contends that the testimony was insufficient to prove the required element of penetration. We agree.

### 1. Additional Facts

On or about 28 February 2015, Senior Airman (SrA) MH joined Appellant and then-SrA JV for an evening out at XTC Nightclub. The club had a Bring Your Own Drink policy allowing patrons to bring their own alcoholic beverages into the nightclub. The group took advantage of the policy by bringing a bottle of vodka to share. SrA MH had the largest share and eventually became ill. When she felt the need to throw up, she left the nightclub. Appellant walked her to SrA JV's Jeep where he encouraged her to throw up, patted her head, and rubbed her back. Sometime after SrA MH threw up, SrA JV returned to the Jeep. SrA JV and Appellant then attempted to take SrA MH to her apartment. Upon their arrival, she refused to get out of the car. According to SrA MH, she "didn't want them to see her apartment" so she "laid back in the Jeep and tried to sleep."

SrA JV then decided to get a hotel room for the evening in an effort to avoid driving the long distance back home. After SrA JV paid for the room, SrA MH got out of the Jeep, went inside and laid on one of the two beds. SrA JV laid on the other bed and fell asleep. Appellant later came into the room, got into the bed with SrA MH, and began touching her. What happened next is best described through SrA MH's testimony during direct examination:

> Q. After [Appellant] got in bed with you, did anything else happen?
>
> A. Yes.
>
> Q. What happened next?
>
> A. He started touching me more, talking to me, telling me things, touching me.

Q.      Where did he touch you?

A.      All over; kind of, you know, roaming.

. . .

Q.      And you said he was saying things; you do remember what he was saying?

A.      "You're so beautiful." I remember that. I don't remember much else. I do remember at one point he said he was wanting to have sex and said, "I know you're on your period," because he had felt the string down there.

Q.      Let's talk about that. He felt the string down there. What do you mean by that?

A.      He had his hands down my pants in my crotch area.

Q.      Did his fingers actually go up into your vagina?

A.      They were there, I don't know if it was -- how far he pushed or didn't, but his hand was there.

Q.      When you say there, where was it?

A.      Like over my crotch area.

Q.      Did his fingers touch the opening of your crotch area?

A.      I don't remember exactly if it was on top or ... I can't say for a 100 percent.

Appellant had left the hotel room by the next morning, but later sent SrA MH a message through Facebook.[5] They then had the following exchange:

[Appellant (APP):] I wanted to formally apologize for last night. It was fun but I hope you feel ok.

[MH:]  I don't remember much.

. . .

[APP:] How do you feel?

[MH:]  Like hell.

. . .

---

[5] Facebook is an online social media and social networking service.

I was REALLY drunk last night. I'm just glad nothing too crazy happened. U were trying really hard.

[APP:] That is why I apologized. I feel really bad about it. I was wasted but I will never tell anyone about last night. No worries. Some crazy stuff happened but you are right nothing too bad. You are a very beautiful woman.

. . .

[MH:] I prefer to lock the whole thing away and never think about it again. I'm just glad we didn't have sex.

. . .

[APP:] Look I won't say s**t and we can act like it never happened. Hopefully we can hang out some other time.

[MH:] I just think it was s**tty of you to try 1 your still married 2 [TMS] is my best friend. Yes we talk about everything.

At the close of the Government's case-in-chief, trial defense counsel moved for a directed verdict of not guilty pursuant to R.C.M. 917. Trial defense counsel argued, *inter alia*, that the Government had failed to prove penetration of SrA MH's vulva. The motion was denied; the military judge found there was "some evidence" that one could reasonably infer that Appellant "penetrated [SrA MH's] vulva with his fingers."

### 2. Discussion

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Article 66(c), UCMJ, provides us the authority to approve only those findings of guilt we determine to be correct. "The test for factual sufficiency 'is whether, after weighing the evidence and making allowances for not having personally observed the witnesses,' [we ourselves are] 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). In this unique appellate role, we apply neither the presumption of innocence nor guilt, but rather make our own "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. at 399.

In order to convict Appellant for aggravated sexual assault, the Government was required to prove two elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon SrA MH, and (2) that he did so by penetrating her vulva with his fingers without her consent. A "sexual act" is

defined as "the penetration, however slight, of the vulva . . . by any part of the body or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person." Article 120(g)(1)(B), UCMJ.

The evidence of penetration at trial was largely elicited from SrA MH. On this issue her testimony was clear; she could not confirm whether Appellant penetrated her vagina with his fingers. She could only confirm that he touched her. We have said before that where the evidence simply indicates that the accused touched a victim's vagina or genital area, "the requisite element of penetration has not been established. Such language neither proves nor negates penetration. Instead, it simply creates an ambiguity of proof." *United States v. Milliren*, 31 M.J. 664, 665 (A.F.C.M.R. 1990); *see also United States v. Robles*, No. ACM 36744, 2007 CCA LEXIS 284, *4–5 (A.F. Ct. Crim. App. 30 Jul. 2007) (unpub. op.). When confronted with such an ambiguity, we sustain a conviction "only where there is some evidence, albeit circumstantial or interpretive, from which the court can conclude that penetration occurred." *Milliren,* 31 M.J. at 665. The Government points to two facts upon which we could rely in finding circumstantial evidence of penetration. First, Appellant knew that SrA MH was on her period after having apparently felt her tampon string. Second, SrA MH testified that she was wearing "leather tights" on the evening of her encounter with Appellant. These facts taken together, the Government argues, constitute circumstantial evidence of penetration, "however slight." We are not persuaded.

The evidence that Appellant felt her tampon string—a string designed to extend outside the vulva—does nothing more than confirm what SrA MH already testified; Appellant touched her vagina. In *Robles*, we declined the Government's invitation to infer penetration based on the victim's testimony that appellant's tongue was on her vagina and appellant's admission that he had "oral sex" with the victim. *Robles*, unpub. op. at *4–5. Here, the Government asks us to infer penetration based on the victim's clothing and tampon string. We decline to do so. We are left with an ambiguity of proof which requires us to set aside the finding of guilt as to Specification 3 of Charge III.

We next consider whether the evidence is sufficient to establish Appellant's guilt as to the lesser-included offense of abusive sexual contact in violation of Article 120(c), UCMJ, 10 U.S.C. § 920(c).[6] Unlike her testimony re-

---

[6] At trial defense counsel's specific request, the military judge instructed the members they could consider abusive sexual contact as a lesser-included offense if they were convinced beyond a reasonable doubt that Appellant caused SrA MH bodily harm by touching SrA MH's vulva with his fingers without her consent.

garding penetration, SrA MH was clear and consistent in her testimony that Appellant repeatedly touched her without her consent. Notably, Appellant's subsequent Facebook messages apologizing for his behavior corroborated her account that touching occurred without her consent. Although this evidence proved insufficient to establish penetration, we are ourselves are convinced of Appellant's guilt beyond a reasonable doubt for the offense of abusive sexual contact against SrA MH.

Because we find the lesser-included offense factually sufficient, we must resolve whether to reassess Appellant's sentence. This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013). We may reassess a sentence only if able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted). Applying the factors enumerated in *Winckelmann*, we are not convinced we can reliably make such a determination. *Winckelmann*, 73 M.J. at 15–16. Accordingly, we set aside rather than reassess the sentence.

## C. Uncharged Misconduct Evidence

Appellant alleges that the military judge erred in admitting evidence that Appellant placed SrA MH's hand on his penis during the hotel room incident previously discussed. We disagree.

### 1. Additional Facts.

According to SrA MH, Appellant grabbed her hand and placed it on his penis just after touching her vaginal area. Trial defense counsel objected to this testimony as uncharged misconduct under Military Rule of Evidence 404(b). Trial counsel did not identify one of the enumerated exceptions under Mil. R. Evid. 404(b)(2), instead arguing, as the Government maintains on appeal, that "the Accused placing her hand on his penis is part of the facts and circumstances of the charged offense because it all kind of happened in one encounter as they were in the hotel room together." The military judge likewise found that the evidence was "facts and circumstances of the charged misconduct" and informed the parties that he would "certainly entertain a limiting instruction." No such instruction was requested or given.

During his findings argument, trial counsel made a single mention of the uncharged misconduct while outlining the events taking place between Appellant and SrA MH in the hotel room.

### 2. Discussion.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010)

citation omitted). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *Id*. (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

Mil. R. Evid. 404(b) is a rule of inclusion, not exclusion. *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002). The critical question in determining admissibility under Mil. R. Evid. 404(b) is "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989) (citation omitted); *see also United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (establishing a three-part test is used to determine whether uncharged acts are admissible under Mil. R. Evid. 404(b)). "It is unnecessary, however, that relevant evidence fit snugly into a pigeon hole provided by Mil. R. Evid. 404(b)." *Castillo*, 29 M.J. at 150.

The military judge found the evidence to be facts and circumstances of the charged misconduct. Appellant asserts that the military judge's decision to admit the evidence as "facts and circumstances" erroneously applied "the law governing the presentation of uncharged misconduct . . . during sentencing." We disagree. It is well-settled that uncharged misconduct which is "inextricably related in time and place to the offenses charged" is distinguished from other uncharged misconduct. *United States v. Thomas*, 11 M.J. 388, 392 (C.M.A. 1981); *see also United States v. Anderson*, 36 M.J. 963, 982 (A.F.C.M.R. 1993) (holding that a limiting instruction is not required when uncharged misconduct is "part and parcel" of the offense charged). To hold that such evidence is inadmissible would "provide an inducement to prefer more charges in order to avoid lack of continuity in the evidence received." *Thomas*, 11 M.J. at 393. Like the Court of Military Appeals, "we are not anxious to provide an added inducement for overcharging." *Id*.

We find the evidence of Appellant placing SrA MH's hand on his penis "interwoven" in the *res gestae* of the offense, and as such, was properly admitted by the military judge for a legitimate non-propensity purpose. *See United States v. Metz*, 34 M.J. 349, 351 (C.M.A. 1992).

## D. Instructional Error

The military judge gave the following instruction in advising the members how to deliberate on findings: "If, based on your consideration of the evidence, you are firmly convinced that the Accused is guilty of the offenses charged, you should find him guilty." As he did at trial, Appellant asserts that the mil-

itary judge's instruction lowered the proof requirement to "a standard be-
tween preponderance and reasonable doubt." We disagree.

### 1. Additional Facts.

During a hearing outside the presence of members, the military judge
sought input from counsel on the appropriate instructions to be given to the
members. Trial defense counsel requested the military judge deviate from the
standard Air Force instruction on reasonable doubt and instead provide the
standard Army instruction.[7] Specifically, trial defense counsel took issue with
two components of the Air Force instruction: (1) its use of the term "firmly
convinced" in defining reasonable doubt; and (2) its direction that, if the
members were "firmly convinced" they "must" find the accused guilty. The

---

[7] The standard Air Force reasonable doubt instruction reads,

> A "reasonable doubt" is a conscientious doubt based upon reason and
> common sense, and arising from the state of the evidence. . . . In crim-
> inal cases, the government's proof must be more powerful than that.
> It must be beyond a reasonable doubt. Proof beyond a reasonable
> doubt is proof that leaves you *firmly convinced* of the accused's guilt.
> There are very few things in the world that we know with absolute
> certainty, and in criminal cases, the law does not require proof that
> overcomes every possible doubt. If, based on your consideration of the
> evidence, you're *firmly convinced* that the accused is guilty of any of-
> fense charged, you *must* find [the accused] guilty. If, on the other
> hand, you think there is a real possibility the accused is not guilty,
> you *must* give [the accused] the benefit of the doubt and find [the ac-
> cused] not guilty.

*Air Force Benchbook*, Dep't of the Air Force, Air Force Benchbook, ch. 2, § V, para. 2-
5-12 (2016) (emphasis added).

The standard Army reasonable doubt instruction reads,

> A "reasonable doubt" is not a fanciful or ingenious doubt or conjec-
> ture, but an honest, conscientious doubt suggested by the material ev-
> idence or lack of it in the case. It is an honest misgiving generated by
> insufficiency of proof of guilt. Proof beyond a reasonable doubt means
> proof to an evidentiary certainty, although not necessarily to an abso-
> lute or mathematical certainty. The proof must be such as to exclude
> not every hypothesis or possibility of innocence, but every fair and ra-
> tional hypothesis except that of guilt. The rule as to reasonable doubt
> extends to every element of the offense(s), although each particular
> fact advanced by the prosecution, which does not amount to an ele-
> ment, need not be established beyond a reasonable doubt. However, if
> on the whole evidence, you are satisfied beyond a reasonable doubt of
> the truth of each and every element, then you should find the accused
> guilty.

*Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 at 53 (10 Sep. 2014).

military judge partially granted the request, modifying the word "must" to "should." The military judge did not alter the phrase "firmly convinced."

### 2. Discussion.

Whether a military judge appropriately instructed a court-martial panel is a question of law we review de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (citations omitted). *McClour* involved a similar but distinct dispute regarding the Air Force and Army instructions on reasonable doubt. The issue in *McClour* was whether the phrase "you must find him guilty" constituted a directed verdict. The CAAF found no plain error in the absence of a defense objection. Here, on the other hand, Appellant repeats an objection made by trial defense counsel that defining reasonable doubt as being "firmly convinced" lessens the Government's burden. Citing *State v. Perez*, 90 Haw. 113, 129 (Haw. Ct. App. 1998), Appellant argues that the military judge's use of the phrase "firmly convinced" is "associated in the law with the lesser burden of clear and convincing evidence, as to communicate something less than the highest burden under the law, that of 'beyond a reasonable doubt.'" We are not persuaded.

The Air Force instruction used by the military judge, including its use of the phrase "firmly convinced," is taken verbatim from the Federal Judiciary Center's Pattern Criminal Jury Instructions. Notably, the Air Force adopted the instruction following a recommendation from the Court of Military Appeals in *United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) (citing *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment)). The CAAF recently took the opportunity to reiterate its approval of the instruction. *McClour*, 76 M.J. at 25. We find no reason to disagree. The military judge provided "instructions necessary for the members to arrive at an intelligent decision concerning [A]ppellant's guilt." *United States v. Green*, 62 M.J. 501, 503 (A.F. Ct. Crim. App. 2005) (quoting *United States v. Baker*, 57 M.J. 330, 333 (C.A.A.F. 2002)). We agree with Justice Ginsburg's interpretation of the instruction that "[t]he 'firmly convinced' standard for conviction, repeated for emphasis, is further enhanced by the juxtaposed prescription that the jury must acquit if there is a 'real possibility' that the defendant is innocent." *Victor*, 511 U.S. at 27.

We find that the military judge's reasonable doubt instruction in this case was appropriate.

### III. CONCLUSION

The finding of guilty as to sexual assault in Specification 3 of Charge III is set aside. The lesser-included offense of abusive sexual contact and the remaining findings are correct in law and fact, and no other error materially

prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, are **AFFIRMED**. The sentence is **SET ASIDE**.

The record of trial is returned to The Judge Advocate General for remand to an appropriate convening authority who may order a rehearing. Article 66(e), UCMJ, 10 U.S.C. § 866(e).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court